WILLIAM HENRY JOHNSTON et al. v. THE UNION BANK OF TENNESSEE.

1. VENDOR AND VENDEE: LIEN FOR PURCHASE-MONEY: LOST BY SECURITY.—If the vendor take a distinct and independent security for the purchase-money, his lien on the land is discharged.

2. EXECUTOR AND ADMINISTRATOR: POWER OF ADULT TO BIND ESTATE BY A GUARANTY.—An administrator has no power to bind the estate by his guaranty of the payment of a note transferred by him in discharge of a debt due by the intestate.

3. SAME: PROCEEDS OF LAND SOLD FOR A DIVISION NOT ASSETS.—The proceeds of a sale of land, made under an order of the Probate Court, for a division among the heirs, are not assets in the hands of the administrator, for the payment of debts, without an order of the probate condemning them for that purpose.

4. VENDOR AND VENDEE: VENDOR'S LIEN: CASE IN JUDGMENT.—The vendor executed to the vendee a title bond, obligating himself to make a deed, when the purchase-money was paid; after the death of the vendee, his administrator transferred to the vendor, in discharge of the purchase-money, a note on a third party, and guaranteed its payment, and, at the same time, received a deed from the vendor, which he promised not to place on record until the vendor was satisfied as to the payment of the note transferred; the collection of this last-mentioned note was afterwards defeated by reason of a failure in the consideration thereof, and the vendor thereupon filed his bill to enforce his lien for the unpaid purchase-money. Held, that the reception of the note, and the guaranty of the administrator in discharge of the purchase-money, was a waiver of the vendor's lien; and that bill must be dismissed.

ERROR to the Chancery Court of De Soto county.    Hon. P. T. Scruggs, chancellor.

White and Chalmers, for plaintiffs in error.

No memorandum of the argument of Messrs. White and Chalmers has come into my possession.

Watson, Craft, and Fort, for defendant in error.

The petition exhibited by the plaintiffs in error in vacation, to set aside the pro confesso against them and open the decree, &c., forms no part of the record.    The judge in vacation had no jurisdiction of the case made by said petition.    The decree sought to be set aside was against Foote, administrator of Bullard, for $815 63,

and costs, to be paid out of the goods and chattels, rights and credits, that were of said decedent, Bullard, in the hands of his said administrator, and on failure to make this payment, for the sale of the land.   This decree was final upon the merits of the controversy; and after the term of the court at which it was rendered, the power of the court over it, and *a fortiori*, of the judge in vacation, ceased.   *Whitney* v. *Bank of United States*, 13 Peters, 6. In the case of *Stebbins* v. *Niles*, 13 S. & M. 307, it was decided, that a decree subjecting certain lands to an alleged lien, and providing for the costs of the suit, was not an interlocutory decree, but a final one, from which a writ of error might be prosecuted.  Furthermore, as a general proposition, after a final decree has been signed and spread upon the minutes, and the term has elapsed at which it was rendered, the court has no power on petition to set aside or open such decree; this can only be done by bill of review or appeal. *Sagory* v. *Bayliss*, 13 S. & M. 153.   On the merits of the case, it is submitted, that the decree of the court below is right.   It is true that an executor or administrator has no legal right or power to pay a debt barred by the Statute of Limitations, and make such payment a charge upon the estate of his testator or intestate ; nor can he, by any promise or contract, revive a debt so barred.   But where a valid claim exists against an estate, for the recovery of which there is any legal remedy, the personal representative may and should pay such debt, or he may, by an express promise to pay at a future time, give the creditor a right of action founded on such promise, which will authorize a judgment or decree to be recovered against and paid out of the assets of the estate.   *Bingamon* v. *Robinson*, 25 Miss. 501–505;  *Sims* v. *Sims*, 30 Miss. 333;  *Waul* v. *Kirkman*, 25 Miss. 610 ; *Steele* v. *McDowell*, 9 S. & M. 193; see particularly *Woods* v. *Ridley*, 27 Miss. 120–150.   The administrator, in making the settlement and conditional payment of the debt in question on the 10th August, 1853, only assumed upon himself the responsibility of showing, in any future contest with the distributees, that the said debt, though settled and conditionally paid under no legal compulsion, was nevertheless one which could then have been legally enforced against the estate.   *Roberts* v. *Rogers*, 28 Miss. 152.   This conditional payment was made in notes, and on the express agreement in writing of the administrator,

that if any of the said notes were not paid, or the payment of the same, or any of them, was evaded by any technicality of the law, and payment thereof refused, he would, as the administrator of said Bullard, make up the deficit; and furthermore, the deed of the bank for the land was delivered to said administrator on his agreement that it should not be recorded until the attorneys of the bank were satisfied as to the payment of the said debt.

The proof clearly shows, that when the bill of the bank was filed, there was a balance due it from Bullard's estate on the purchase of the said land, and that this fact was known to the heirs of Bullard, and also to Tate, when he became the purchaser of the said land; and Tate having purchased with notice, the lien for the said balance followed the land into his hands. *Upshaw* v. *Hargrove*, 6 S. & M. 286; *Trotter* v. *Erwin*, 27 Miss. 772.

It is conceded, that an action at law for the balance of the purchase-money, due to the bank for said land, was barred by the Statute of Limitations prior to 10th August, 1853, when the said balance was acknowledged and conditionally paid by the administrator of Bullard, as aforesaid. But it is submitted, that at that time the bank had a remedy for the collection of said debt, either by a suit in equity for specifically enforcing its payment out of the land, or by an action at law for the recovery of the land. It is the firmly-settled docrine of this court, that the remedy to foreclose a mortgage is not barred by the same lapse of time which bars an action upon the note secured by the mortgage. *Miller* v. *Helm*, 2 S. & M. 697; *Miller* v. *Trustees Jefferson College*, 5 Ib. 650; *Bush* v. *Cooper*, 26 Miss. 611; *Trotter* v. *Erwin*, 27 Ib. 772; *Nevitt* v. *Bacon*, 32 Ib. 212.

Until the action of the mortgagee to recover possession of the land is barred, he is not without remedy for the recovery of his debt; and, in like manner, a vendor, who has merely given a bond conditioned to make title on the payment of the purchase-money, is not without remedy until an action by him to recover possession of the property sold is barred, by the adverse possession of his vendee, or another holding under him; and the possession of a vendee under a bond for title, when he pays the purchase-money, is not adverse, but is the possession of his vendor, and so continues until he pays the purchase-money, or in some other way destroys all privity

between himself and his vendor. A vendee in possession, under the bond of his vendor, has bound himself by express contract to recognize his vendor as the owner of the land, so long as the purchase-money remains unpaid, and therefore, in such case the Statute of Limitations does not commence running against the vendor, until the purchase-money is paid, or a deed is made, or something equivalent thereto transpires; the vendee in such case having recognized his vendor's title, by the purchase, is estopped from doing anything to its prejudice, so long as the relation of vendor and vendee continues. *Hill* v. *Samuel*, 31 Miss. 307; *Champlin* v. *Dotson*, 13 S. & M. 554; *Hardeman* v. *Cowan*, 10 Ib. 487.

" It is a well-settled principle that one who obtains possession from another cannot by any words or acts, in which the other does not join, make his possession adverse, for the purpose of taking advantage of the Statute of Limitations." *Reynolds* v. *Cothens*, 5 Jones N. C. Law R. 436.

" The vendor and vendee stand in the relation of landlord and tenant; the vendee cannot disavow the vendor's title." *Bush* v. *Marshall & Whitesides*, 6 How. (U. S.) 284, 291; *Galloway* v. *Finley*, 12 Peters, 295, and cases there cited.

The vendor, who retains the title, giving a bond to convey the land, on the payment of the purchase-money, remains the owner of the land: *Servis* v. *Beatty*, 32 Miss. 52–80; and the entry of the vendee under such circumstances, is with the consent of his vendor, the owner, and in strict subordination to the title of his vendor; and in order to change the character of his possession, and render it adverse, he must do some open and unequivocal act, evincing his intention, and this act must be brought home to the knowledge of his vendor. *Mosby* v. *Williams*, 5 Howard Miss. 520, 524; *Stephenson* v. *Richmond*, 11 Humphreys, 591; *Morrison* v. *Hayes*, 19 Georgia, 294; *McClanahan* v. *Barron*, 27 Miss. 664.

The cases of *Littlejohn* v. *Jordan*, 32 Miss. 235, and *Trotter* v. *Erwin*, 27 Ib. 772, were both correctly decided, and are no wise in conflict with the foregoing authorities. The case of *Littlejohn* v. *Jordan* was a contest, not between a vendor and his vendee, but between a party in possession and a third person, and is similar in its facts to the case of *Fain* v. *Cathright*, 5 Georgia, 6. See this last case fully explained in the case of *Stamper* v. *Griffin*, 12

VOL. VIII.—34

Georgia, 450, 457.   In the case of *Trotter* v. *Erwin*, an action at
law upon the debt had not been barred, and therefore there was no
pretence for holding that the remedy against the land had been
lost.   As to the intimations thrown out in the opinions of the court
in these cases on questions really not before the court, we have only
to say, that "its decisions, however broad the expressions used in
an opinion may be, must be construed with reference to and in con-
nection with the facts of the case."   *Bell* v. *Tombigbee Railroad
Company*, 4 S. & M. 549, 572.   In the case of *Benson* v. *Stewart*,
30 Miss. 49, this court, in considering the relation which exists
between a vendee in possession under bond for title, and his vendor,
laid down the true rule on the subject in the terms following : " It
is said to be a case of mutual understanding and mutual confidence
between the parties, so that the purchaser could not be considered
as holding a possession adverse to the title which he acknowledges,"
p. 58, where the authorities following are also cited, *Kirk* v. *Smith*,
9 Wheaton, 251 ; *Brown* v. *King*, 5 Metcalf, 173 ; *Jackson* v.
*Hotchkiss*, 6 Cowan, 401.   See also *Seaberry* v. *Stewart*, 27 Ala.
207.

The rule is believed to be universal that possession to give title
must be adversary ; and where the defendant has entered under the
plaintiff, and acknowledged his title as that under which he holds,
he cannot, by his own act, without the knowledge of the plaintiff,
change the character originally impressed upon his possession.   A
possession commencing under contract cannot be converted into
adverse possession but by a disclaimer, the assertion of an adverse
title and notice.   In the case of *Kirk* v. *Smith*, 9 Wheaton, 241,
Judge Marshall, in delivering the opinion of the court, and consi-
dering the possession of a vendee under a contract of purchase,
says : " It would shock the sense of right, which must be felt equally
by legislators and by judges, if a possession which was permissive
and entirely consistent with the title of another, should silently bar
that title."   *Clark* v. *McClure*, 10 Grattan, 305, 310, 314 ; *Gay* v.
*Moffit*, 2 Bibb, 506 ; *Boone* v. *Chiles*, 10 Peters, 171 ; *Knox* v.
*Thomas*, 5 Humphreys, 573.

That the vendee's possession under an existing contract for the
sale of land is not adverse, and cannot avail him for protection
under the Statute of Limitations, against the vendor, until after

the payment of the purchase-money, or some other equivalent act, has also been expressly decided in the following cases : *Lander* v. *Rounsaville,* 12 Texas Rep. 195 ; *Stamper* v. *Griffin,* 12 Georgia, 450, 457 ; *Wood* v. *McGuire,* 17 Ib. 303 ; *Hopkins* v. *Cockerell,* 2 Grattan, 88 ; *Hannah* v. *Wilson,* 3 Ib. 243 ; *Secrest* v. *McKenna,* 6 Richardson (S. C.), 72 ; *Floyd* v. *Mumpsey,* 7 Ib. 181.

It should not be overlooked, that as to each of the plaintiffs in error, the bill was taken as confessed : 12 S. & M. 293 ; and that the attempt is now made to raise for the first time a question on the Statute of Limitations. 23 Miss. 87 ; 9 S. & M. 9 ; *Binns* v. *Stokes,* 27 Miss. R. 239 ; *Parr* v. *Gibbons,* 27 Ib. 375. The only parties before the court as plaintiffs in error, are adult defendants, upon whom process was personally served, and against whom a *pro confesso* was regularly taken. *Overstreet* v. *Strainer,* 24 Miss. R. 485 ; *Fox* v. *Mathews,* 33 Ib. 433 ; 12 Illinois R. 255, 258.

HANDY, J., delivered the opinion of the court.

This was a bill in chancery, filed by the defendants in error, to enforce their vendor's lien for the unpaid purchase-money of a tract of land.

The material facts appear to be as follows : In November, 1841, the defendants sold to Christopher Bullard the tract of land, receiving from him two notes for the purchase-money, one payable in December, 1843, and the other in December, 1844, and executing to him their bond conditioned to make title to him on the payment of the notes, and delivering possession to him. Bullard died prior to August, 1853, after having made certain payments upon the notes, and upon petition of his heirs, the land was sold by order of the Court of Probates, and purchased by one Wynne, who executed his two notes for the purchase-money, payable, one in one year and the other in two years, each for the sum of $2150, which were delivered to the administrator of Bullard. Shortly afterwards, a settlement was had by the bank with the administrator, by which the latter transferred in payment of the balance of Bullard's notes, then ascertained to be $2825 03, one of the said notes of Wynne, and a note of one Hall for $735 ; and at the same time, the administrator executed the following agreement in writing : " If any of the above notes are not paid, or the payment of the same, or any one of them, is

evaded by any technicality of the law, and payment thereof refused, I bind myself, as the administrator of the estate of said Bullard, to make up the deficit; and furthermore, that the deed from the bank to the heirs of Bullard for said land shall not be recorded, until the attorneys are satisfied as to the payment of the same. August 10th, 1853. Geo. Foote, Admr." The deed here mentioned was afterwards recorded, without objection of the attorneys of the bank. The original notes of Bullard were given up to his administrator, when this settlement was made.

Afterwards, suit was brought upon one of the notes of Wynne, which he defended on the ground of failure of consideration, arising from the invalidity of the sale under which he had purchased, and judgment was rendered in his favor. He then refused to pay the balance due upon his note transferred to the bank, as above stated, and surrendered the land to the heirs of Bullard, who sold it to one Tate, who, it is alleged by the bill, purchased with notice of the claim of the bank, and, by agreement with the heirs, retained an amount of the purchase-money sufficient to pay the debt of the bank.

The bill is filed against the administrator and heirs of Bullard and Tate, praying the enforcement of the vendor's lien of the bank; and upon personal service of process upon some of the defendants, including the present plaintiffs in error, and upon publication as to certain others, the bill was taken *pro confesso*. A guardian *ad litem* was appointed for certain minor defendants, and the usual answer filed as to them; and upon final hearing, a decree was made ordering the land to be sold in payment of the debt due the bank.

Part of the defendants, against whom the bill had been taken *pro confesso*, afterwards and in vacation, presented their petition praying that the *pro confesso* and decree be set aside, and the cause opened with permission to them to answer the bill; which application was denied.

The first error insisted upon is, that under the state of facts shown by the bill and the proofs taken, the decree enforcing the vendor's lien was erroneous, because it appears that the bank had taken other security for the purchase-money due her, having sur-

rendered the original notes given therefor, and executed an absolute conveyance of the land.

This objection appears to be well taken. It is too well settled to admit of controversy, that where a distinct and independent security is taken for the purchase-money, the lien is discharged. Here the original notes, which constituted the indebtedness of the purchaser for the purchase-money, were given up and cancelled, and the bill expressly states this was done upon receiving from the administrator notes executed by other persons, and a written guaranty by the administrator, for the payment of the same, which instrument also states that the notes so transferred *were in payment* of the original notes for the purchase-money. This was clearly an abandonment of the claim existing under the original contract, and the acceptance of a new and distinct security in lieu of it.

If it be conceded, that the guaranty of the administrator was binding upon the estate of the intestate, still that does not destroy the effect of the transferred notes as a distinct and independent security for the debt. For the transferred notes would be the principal security, and the liability of the estate would be secondary and collateral; and it would be a liability not directly for the performance of the contract of the intestate to pay the purchase-money to the vendor, but that the makers of the notes should pay the same. It would, therefore, be a much clearer case of waiver of the vendor's lien, than if the vendee had given collateral security upon his notes for the purchase-money, he continuing primarily bound for their payment, which would clearly have discharged the lien.

But the guaranty of the administrator did not bind the estate of the intestate. If the note of Wynne, transferred by the administrator, had been proper assets of the estate in his hands, he had no authority in law to bind the estate by a collateral guaranty for its payment; and if the guaranty had any effect, it was to bind him individually. The note, however, was not legitimately in his hands as assets. It was executed for the purchase-money of the land sold under a decree of the Court of Probates, upon the application of the heirs, and for the purpose of division among them, by a commissioner appointed for that purpose, and was made payable to the commissioner. The bill alleges that it was "turned over" to Foote

the administrator, but in what manner, and under what authority, does not appear. It is probable that it was by private arrangement with the heirs, who consented that he might use it in discharging the original notes for the purchase-money. But be that as it may, it is clear that it was not legally in his hands as assets of the estate, and therefore, he was incompetent, under any circumstances, to create an obligation upon the estate by his guaranty. And hence the debt against the estate must be considered as wholly discharged, and that the bank held in lieu of it the transferred notes and the guaranty of Foote; and, of course, under such circumstances, no vendor's lien could be enforced.

It is immaterial that the deed conveying the land to the heirs of Bullard, upon the settlement made with the administrator, was delivered to him, on his agreement that it should not be recorded until the attorneys of the bank were satisfied as to the payment of the notes transferred. For the original debt for the purchase-money having been paid and discharged, and the liability of the estate of the vendee thereupon extinguished, there was nothing on which to base a bill to enforce the vendor's lien; for the party bound upon that contract was discharged. If the deed was properly recorded, with the sanction of the attorneys for the bank, no lien was retained; for there is no pretence that any lien was retained when the settlement was made, except what arose from the agreement to withhold the deed from record. It is not alleged in the bill that the deed was recorded without authority, and in violation of the agreement made between Foote and the attorneys of the bank when it was executed. On the contrary, the bill appears to hold the idea, that the registration of the deed was proper and valid; for it states that it was done, "if not with the consent, at least without objection from complainants' attorneys," and no objection is made on the ground of improper registration of the deed. Upon such a state of case, the vendor's lien cannot be sustained upon the assumption that the deed was recorded improperly, and in violation of the agreement and of the reserved right of the bank.

But if the bill were framed with that view, and contained the proper allegations to that effect, though it might entitle the bank to have the deed set aside as having been fraudulently recorded,

and the legal title to the land restored to her, as though the deed had never been executed, with the right to enforce her equitable claim upon the land; upon which view, we do not intend to express any opinion; yet it does not entitle her to maintain a bill to enforce a vendor's lien. For, 1st, the contract of the purchaser, which it is the object of the proceeding to enforce, is entirely discharged; and 2d, if the deed is inoperative as a conveyance, the legal title is in the bank, and it presents no case in which the vendor can come into a court of equity to enforce his lien for unpaid purchase-money. His remedy, if any, is by another mode of proceeding than by a bill framed, as this is, for the enforcement of the vendor's lien.

This view disposes of the case, and renders it unnecessary to consider the other assignments of error.

Let the decree be reversed, and the bill dismissed.

