# WILLIAM G. MYERS v. RHODES R. ESTELL. ·

1. CHANCERY—RECEIVER.—If the mortgagee or beneficiary in a trust deed do not stipulate for the rents and profits of the estate conveyed, ordinarily he is not entitled to them, nor has he any claim upon them until he has taken possession.

2. SAME—WHEN MORTGAGEE ENTITLED TO.—In the absence of any stipulation in the contract, that the mortgagee shall have the rents and profits, he has no claim thereto merely on the ground that the debt is due and the title become absolute, but is only entitled to a receiver for the .collection and appropriation of the rents where the property is insufficient to pay the debt, and the mortgagor is insolvent, or unable to pay any deficiency that might remain after sale of the property mortgaged.

3. SAME—APPOINTMENT OF.—The appointment of a receiver on the application of a mortgagee, being a matter resting in the sound discretion of the court, the better rule to govern that discretion is that which will grant the order of appointment, as it may or may not be an essential means to pay the debt secured by the mortgage.

4. CHANCERY—DEEDS OF TRUST—RECEIVER.—Courts of equity, regarding a deed of trust as a security made by the debtor for the payment of his creditor, will give to the creditor the substantial benefits of such deed; and where the deed gives to the trustee no power to enter upon and take possession of the premises, will and should appoint a receiver, if the trustee, after accepting and acting under the appointment, by combination and collusion with the grantor in the deed declines to execute the trust, and after instituting an action of ejectment to recover the possession of the premises, causes the same to be dismissed against the wishes of a *cestui que trust*, the property being inadequate to the payment of the debt secured by the conveyance.

5. SAME—RECEIVER—CASE IN JUDGMENT.—M. made deed of trust to W., conveying two-thirds interest in certain lands, to secure a debt for the purchase money of the whole tract, due E., and providing that eighteen months after the last note matured the trustee should advertise and sell. W. accepted the trust, and at the proper time brought suit to recover possession of the premises, and contemporaneously advertised the same for sale according to the exigency of the deed. Subsequently, by collusion and combination with the grantor, the trustee, against the wishes of the *cestui que trust*, dismissed the suit and declined to execute the trust. M. leased lands to tenants, and taking their notes for rents, sent them out of the state to C. E. C. He also conveyed the remaining third of the lands to a trustee for his children. On bill to foreclose and for receiver, *held*, that a receiver was properly appointed to take possession of the lands conveyed to the trustee.

6. SAME—VENDOR'S LIEN.—The taking by a vendor of an express lien upon two-thirds of a tract of land sold, to secure the balance of purchase money due upon the entire tract, is *prima facie* a waiver of the vendor's lien, and requires rebutting proof of the strongest kind to show a contrary intention of the parties at the time, if any such . intention and purpose existed.

APPEAL from the chancery court of Bolivar county. HARMON, Chancellor.

The appellee, Estell, on the 28th December, 1866, sold to the appellant, Myers, a certain tract of land in Bolivar county, with some personalty, for $71,000, of

which there was paid in cash $31,000. The balance of the purchase money was evidenced by three promissory notes of the vendee, one for $5,000, due February 1, 1867; one for $17,500, due January 1, 1868, and the third for $17,500, due January 1, 1869. The deed to Myers acknowledged receipt of the entire purchase money, and, to secure payment of the notes above mentioned, Myers gave to Wilson, trustee, a deed conveying two-thirds of the land sold, and expressing on its face that it was given as "additional security." This trust deed provided that, if the notes were not paid, the trustee might, eighteen months after the maturity of the last note, advertise and sell the property to raise the money wherewith to discharge the notes. In October, 1867, Myers conveyed the remaining third of the lands to John W. Myers, as a trustee for his children.

After the lapse of the eighteen months, Wilson, the trustee, at the request of Estell, the *cestui que trust,* advertised the lands conveyed to him according to the exigency of the deed; and, not being specially authorized by the deed to take possession, instituted an action of ejectment to recover the possession of the lands for the purpose of securing the rents arising out of them during the year 1870. He subsequently demanded of Estell a fee of $1,000 for his services prior to the sale of the lands, which Estell declined to pay. Afterward, at the solicitation of Myers—the bill charges, "by combination and collusion with Myers"— he dismissed the action of ejectment, and refused to sell the lands as he had advertised.

Myers took rent notes from his colored tenants pending these proceedings, and sent them to C. E. Clark, of Memphis, to whom, without consideration, he assigned them. The complainant alleged that this was done to conceal his assets; the respondent, that it was done to raise funds to compromise with his creditor and discharge the lien debt.

The bill alleges that the lands are inadequate to the payment of the debt; that to accomplish this the application of the rents is necessary; that it was plainly anticipated at the time of sale this should be done; that the trustee and the grantor in the deed have combined and colluded together to hinder, delay and defraud the complainant, and that, by their collusion and fraudulent combination, they have deprived him of his legal rights in the premises.

The testimony taken in the cause shows that the lands embraced in the trust deed are not worth exceeding the sum of $28,000, and the letters of Myers, filed, that they are not worth more than $20,000. The other facts developed in the pleadings and evidence are not referred to, because the questions therein arising were not decided by the court.

The chancellor appointed a receiver to take possession of the entire tract of land, as well that conveyed by the trust need, as that upon which the complainant had no express lien and of the rent notes transferred to C. E. Clarke.

The case was twice argued before the court, after the first argument and opinion was read reversing the decree of the chancellor *in toto*. Afterwards, on a re-argument, the opinion was modified, affirming the decision of the chancellor in so far as it applied to that part of the property upon which the appellee had an express lien, and reversing it as to the third, upon which the complainant contended that he had a vendor's lien, and as to the rent notes assigned to C. E. Clark.

*H. T. Ellett*, for appellant.

The bill must lay a foundation for the appointment of a receiver by stating the facts which show its necessity or propriety. Vause v. Woods, 46 Miss. 127, citing Tomlinson v. Ward, 2 Conn. 396.

The complainant can have no relief except upon the case as made by the bill, and the defendant is not obliged to meet a case made by the proof but not stated in the bill. 2 S. & M. 108 ; 23 Miss. 64; 24 ib. 134; 28 ib. 156; 31 ib. 261, 265; 33 ib. 141; 35 ib. 246; 41 ib. 531; 45 ib. 364.

All evidence in support of facts, not relied on in the bill or answer, is irrelevant and inadmissible. Gres. Eq. Ev. 159, 161; 1 Vern. 484; 11 Ves. 240; 12 ib. 477; 2 Ball & B. 47; 1 Russ. & Myl., 527; 2 Stockt. (N. J.) 497; 6 Johns. 543.

I. Keeping these familiar rules in view, we insist that the court below erred in appointing a receiver of that part of the land embraced in the deed of trust.

The rule is well settled in England, that if the first mortgagee neglect to take the precaution of an agreement with the mortgagor for the appointment of a receiver, he cannot obtain such appointment by order of the court, but must eject the mortgagor at law. Such a mortgagee, having the legal title, has nothing to do but to enter and take possession. Coote on Mortgages, 595–596, (18 Law Lib.); 3 Dan. Ch. Pr. 1950, 1953, 1961; Adams Eq. 267 (122), 673 (353); Story Eq. Jur. 2, § 843; Berney v. Sewell, 1 Jac. & Walk. 627; Brookes v. Greathead, ib. 176; Quarrel v. Beckford, 13 Ves. 377; Codington v. Parker, 16 ib. 469; Huguenin v. Beasley, 13 ib. 105; Bryan v. Cormick, 1 Cox, 422; Dalmer v. Dashwood, 2 ib. 378; Phipps v. Bishop of Bath and Westminster, 2 Dick. 608; Archdeacon v. Bowes, 3 Austr. 752; Vance v. Burnett, 2 Bro. C. C. (158); Metcalfe v. Puloutoft, 1 Ves. & Bea. 180; Lloyd v. Passingham, 3 Mer. 696; Whitmore v. Parks, 3 Humph. 99.

Rents attach *de jure* to the owner of the equity of redemption. Gordon v. Lewis, 2 Sumner, 153. And where they are not expressly mortgaged they belong to the mortgagor; and the mortgagee has no right

to them unless he obtains possession of the land, and then he receives them as the bailiff or steward of the mortgagor, and must account. 1 Hilliard on Mort. 199, § 27 ; ib. 448, § 1.

The authorities show that courts of equity will interpose in favor of an equitable mortgagee against a legal mortgagee who refuses to take possession, because such equitable mortgagee has no remedy at law.

But a legal mortgagee, who has not taken care to provide for keeping down accruing interest by securing a lien on the rents and profits, is never entitled to a receiver without alleging and proving that the property is an insufficient security, and that the mortgagor is insolvent. Both these conditions must concur, and no case can be produced to the contrary. 1 Hilliard on Mort. 474–5, § 45.

Such is the settled rule in Michigan. Brown v. Chase, Walker Ch. 43 ; Payne v. Atterbury, Harring. Ch. 419. And in Maryland. Kip v. Hanna, 2 Bland. Ch. 31. And also in New York. Bank of Ogdensburgh v. Arnold, 5 Paige, 40 ; Jenkins v. Hinman, 5 ib. 310 ; Sea Ins. Co. v. Stebbins, 8 ib. 565 ; Astor v. Turner, 11 ib. 436 ; Shotwell v. Smith, 3 Edwards Ch. 588 ; Warner v. Gouverneur's Ex'rs, 1 Barb. (S. C.) 36.

In Bank of Ogdensburgh v. Arnold, 5 Paige, 40, it was conceded that the mortgagor had died insolvent, and the receiver was denied on the ground that the debt was not due, and that the mortgage contained no express pledge of the rents and profits.

And this case is referred to in Bortelyeu v. Hathaway, 3 Stock. 41, as being the first case in New York establishing the rule that a receiver will be appointed where the premises are an insufficient security and the mortgagor is insolvent.

But this doctrine is not universally received. It is rejected in New Jersey, where there has always been an able chancery court.

In Best v. Schermier, 4 Halst. Ch. 154, a junior mortgagee, besides his mortgage, took an assignment of the rents and profits. A prior mortgagee obtained an injunction and a receiver, which were discharged on motion. The chancellor said: "I have uniformly denied applications to appoint receivers of rents, made on filing foreclosure bills. I have considered that the mortgagor is entitled to the rents while he is possession by his tenants. I am satisfied that the contrary practice was inconsistent with what is now well understood to be the nature of a mortgage and led to great oppression. The view I have taken was sustained by the court of errors in the case of Sanderson v. Price."

This case of Sanderson v. Price is reported in 1 Zab. 637. The mortgagee brought ejectment against a lessee of the mortgagor, after the date of the mortgage. Shortly before recovery in ejectment, the tenant surrendered the possession. The mortgagee then brought an action against the tenant for *mesne* profits from the service of the declaration in ejectment to the date of the surrender. And it was decided against the mortgagee on the ground that he had no right to the rents until after he took actual possession of the premises.

That was case at law, and a similar decision had been made in Loudus v. Vansickle, 5 Halst. 313, where it was held that neither the mortgagor nor his tenant, under a demise subsequent to the mortgage, was compelled to account or pay rent to the mortgagee.

In Price v. Smith, 1 Green Ch. 516, the same rule was expressly held to prevail in chancery. "If the mortgagor is the owner of the fee, and may lease the premises (as the chancellor holds he is), and cannot himself be made answerable for the rents while he is in possession, why should his tenant?

That this is settled law, see 2 Washb. Real Prop. 130 (532), § 30.

Again, in Cortelyeu v. Hathaway, 3 Stock. Ch. 40,

where the inadequacy of the security and the insolvency of the mortagor were both proved and admitted, the chancellor held that both these conditions concurring were not sufficient to justify a receiver, without the additional equitable circumstances existing in the case, to wit: the violation by the purchaser of th eequity of redemption of the agreement, under which he was put in possession, that he would reduce the debt one-fourth, and his evident purpose to abandon the property after he had reaped the crop.

In this case, the complainant was the fourth mortgagee, with all the advantages of an equitable mortgage only. And when the chancellor speaks of "bad faith in misappropriating the rents and profits," he evidently means where there is a stipulation on that subject which has been violated; for the other New Jersey cases cited show that the rents and profits belong to the mortgagor until the mortgagee obtains actual possession.

II. The court erred in appointing a receiver of the one-third of the land which was not embraced in the deed of trust.

This was done on the idea that the complainant, in addition to his deed of trust on his part, had also an implied equitable lien as vendor on the whole land for the unpaid purchase money.

The vendor's lien arises by implication of law from the presumed intention of the parties, and is independent of any contract; and it is held to exist in all cases unless a contrary intention appears. Walton v. Hargraves, 42 Miss. 26, 27. But,

1. The vendor's lien is confined to sales of land, and will not arise where real and personal property are conveyed by one deed, under an entire contract, for one and the same consideration. James v. Bird, 8 Leigh, 610; McCandlish v. Keen, 13 Grat. 615–629.

In this case, the bill, the deed, the answer and testi-

mony of both parties show that the real and personal property was all sold in a lump for a round price, no particular price being fixed on any part of the property.

2. There is no affirmative proof of any intention to retain the lien, and it is settled that where a bond is given for the purchase money, and a mortgage on part of the land, the intention is clear that the lien shall not extend over the rest; and also that, where a lien by mortgage is taken for a part of the purchase money, there is no implied lien for the residue. 1 Lead. Cas. Eq. 268, 272, 273 (3d ed. 356, 364, 365); Copper v. Spottiswoode, Toml. 21; Bond v. Kent, 2 Vern. 281; Hughes v. Kearney, 1 Sch. & Lef. 135; Little v. Brown, 2 Leigh, 353; Brown v. Gilman, 4 Wheat. 256, 290, 291; Fish v. Howland, 4 Cond. R. 456; 1 Paige, 20, 31; Phillips v. Saunderson, S. & M. Ch. 462; 2 Sug. Vend. 66, 67; Adams Eq. 279 (128); Fonda v. Jones, 42 Miss. 794.

3. It is admitted by the pleadings that no lien or incumbrance was expressly retained on the one-third omitted from the deed of trust.

The question of lien or no lien is always one of intention, to be collected from circumstances which have taken place. Adams Eq. 279 (129); Fonda v. Jones, 42 Miss. 794.

III. The court erred in appointing a receiver of the notes given to Myers by his lessees for rent, secured by mortgage on their crops, and in requiring him to deliver them to the receiver.

The bill alleges that these notes and liens had been transferred to C. E. Clark, of Memphis, to whom Myers was not then indebted; but it does not deny that the transfer was in good faith and for value.

The answer states that they were transferred to the firm of Clark, Ely & Co., of Memphis, as security for supplies and as a basis of credit for advances, etc.

The decree recites that they were then "in the hands of Clark, Ely & Co."

Clark, Ely & Co. are not made parties, and yet Myers is required to deliver to the receiver these securities, that have thus been transferred to and are held by these persons out of the jurisdiction of the state of Mississippi. The error is apparent; but if authority were wanted, it is at hand. "Where a mortgagee has not taken a specific pledge of the rents and profits, he has no equitable right to them against the assignee of a chattel mortgage from the tenant to the mortgagor to secure the rent." 1 Hilliard on Mort. 199, § 27.

*Nugent & Yerger*, for appellee.

The main question to be determined in this cause is : Did the chancellor exercise a "sound discretion" when he appointed a receiver?

The law as to the appointment of receivers is now well settled in our state. Applications for this purpose, it is said, are addressed to the "sound discretion" of the court, and this discretion is to be exercised as an "auxiliary" to the attainment of the ends of justice. The administration of this "preventive justice" results in and is intended for the security of all parties concerned. The possession of the receiver is not adverse or in hostility to the rights of the defendant; it is the possession of the court, held "equally for the greater safety of all the parties." Ordinarily, to justify such appointment on the application of a complainant, he must show that he has a clear right to the property itself; or that he has a lien upon it; or that it constitutes a special fund to which he has a right to resort for the satisfaction of his claim. And that the possession of the property by defendant was obtained by fraud; or that the property itself, or the income arising from it is in danger of loss from the neglect, waste, misconduct or insolvency of the defendant. As

against a mortgagor, when the entire debt is due, a receiver will be appointed to collect the rents of the mortgaged premises at any time after the filing of the bill, if the property is not of sufficient value to pay the mortgage debt. At law, the mortgagee is the owner of the property; and even where nothing but a pure vendor's lien exists, the vendee is not, in equity, the owner adversely to it. He is treated as a trustee for the vendor until the purchase money is paid. Hence, it follows that in all cases where the property itself is insufficient to discharge the lien the vendor can claim to have the rents paid to a receiver pending the controversy. 1 Hilliard on Mort., ch. 23, §§ 1–2, 10, *et seq;* Mays v. Rose et al., Freeman Ch. 718; Whitehead, Ex'r v. Wooten et al., 43 Miss. 527; Walton v. Hargroves, 42 ib. 27; Bank of Ogdensburgh v. Arnold, 5 Paige, 40.

The facts of this case to which we are to apply these principles of law may be briefly stated. Estell sold the lands set out in the bill with some personalty to Myers for seventy thousand dollars, thirty thousand cash, and forty thousand dollars in one, two and three years from the day of sale. These deferred payments were evidenced by the promissory notes of Myers, which are carefully drawn and minutely described in the deed from Estell. So clear and exact is the description, that any one upon the most cursory reading of the deed could identify the notes filed with the bill as being those given for the land. Thus, the unpaid purchase money is certain and fixed, due directly to the vendor, and the world, by registration of the deed, has constructive notice of the fact. The very instant Estell sold and conveyed this land, his lien as a vendor attached for all the unpaid purchase money. And though this lien is said to be an "implied lien," it is in equity held and treated as a mortgage, both because an express mortgage creates no higher interest than a

lien, and because the mode of enforcing it and the general right and remedies incident to it, are substantially similar to those created by an express mortgage. The doctrine of equity is, that a vendor of real estate, without receiving payment of the purchase money, has a lien for so much of it as remains unpaid. This lien always exist *prima facie* on the land sold, and the burden of proof is on the vendee to show that it has been intentionally displaced or waived expressly or impliedly by the consent of the parties. If, under all the circumstances, it remains in doubt, then the lien attaches. Had the contract between the parties terminated with the delivery by Estell of his deed, and by Myers of the notes, there could be no difficulty in the case at all. The entire debt is due and the property not worth as much by $15,000. 1 Hilliard on Mort., ch. 23, §§ 1–2; 2 Story Eq. Jur., § 1224; Walton v. Hargroves, 42 Miss. 19.

It is objected, however, that Estell took from Myers a trust deed upon two-thirds of the property sold, and that having thus "carved" out his own security, his vendor's lien is extinguished. This objection is predicated of the decision of this court in Clower v. Rawlings, 9 S. & M. 128, and Dodge v. Evans, 43 Miss. 579. Neither one of these cases sustains this view. The rule that for a party carving out his own security, the law will not create another in aid, is said to be of early authority; but this general statement of a rule, in arguing, is not decisive of the issue presented in the cases. In the first, the point was, that after retaining the lien, by withholding the deed of conveyance for nearly two years, the vendor had delivered a deed to the vendee upon an agreement that his vendee should, by a mortgage of the identical land conveyed, raise money to pay the balance due the vendor. This, the court say, was an act evincing a determination to abandon the equitable lien; had the vendor designed

to retain this lien, it would have defeated the effort to
obtain from the bank the loan to be secured by the
mortgage, one of the objects of which was to raise
money to liquidate the balance of the purchase money.
This, then, was in law a waiver, and to that extent the
decision is proper. In the latter case there was no
adjudication of the point. The court simply decides
that in a bill to enforce the equitable lien it is not
necessary to state that the vendor did not take security
for his debt. In their argument the court goes no fur-
ther than to say that, if the vendor takes collateral
security, as a bond or note, with a surety or indorser,
or a mortgage or pledge, he has elected his security and
will be taken to waive that which the law would im-
ply. And then the case of Clower v. Rawlings is cited
as sustaining the court; this we have seen was only
decisive of one point, and that the point of waiver.
If it decided anything as to mortgage or pledge, it was
that the delivery of a deed upon an agreement that
the vendee was, by a mortgage to a third party, to
raise money to pay balance due to the vendor, was an
abandonment of the lien. In other words, the taking
of a mortgage upon land sold is an "intentional dis-
placement" of the vendor's lien, or a "waiver" of the
equitable lien upon the land, and the vendor must
look to his mortgage; but here let us observe the
whole land was to have been mortgaged.

The trust deed given by Myers is somewhat singular.
After reciting the sale and purchase, it states that the
deed is given as additional security. The trustee was
only authorized to sell eighteen months after the
maturity of the last note, and was not authorized to
take possession of the premises. Besides this, the
vendee only conveys to the trustee two-thirds of the
identical property sold him. It may be admitted that
the execution of this trust deed was a displacement
*pro tanto* of the equitable lien, and that Estell was

bound to look to it with a view to subject this two-thirds interest to the payment of his debt. But, even then, it by no means follows that it displaced the vendor's lien upon the remaining third of the property. The law always presumes an intention to retain the lein, and this presumption must run all through the transaction. Judging the parties by their acts, we should say that the equitable lien upon the third of the property not embraced in the trust deed remained intact. It is for the vendee to show that by taking a trust deed upon two-thirds of the property—all of which was bound—the vendor abandoned his lien upon the remaining third. Certainly the two are not inconsistent. The question is not that of a collateral security; or a distinct and independent security; or a mortgage or pledge of other property. The trust deed upon two-thirds of the property is not necessarily inconsistent with, or in opposition to, the lien already existing upon the whole. It presented no other security; it offered nothing in addition to what was already bound; it simply changed the mode in which the lien was to be enforced, and that, too, in the interest of the vendee. The land was the thing, the security Estell had for the payment of his debt; and, to adopt the hypothesis of the defendant's solicitors, the mere taking of the trust deed upon two-thirds of the land amounted to a legal displacement, or an intentional waiver of the lien then resting on the whole. In other words, the binding by express mortgage of two-thirds of what was bound already by a lien equal in dignity, necessarily destroyed the lien resting upon what was not in fact expressly mortgaged. This scarcely appears to be a reasonable proposition. The trust deed does not so state the contract. It gave no collateral, or distinct and independent security. It did not create a lien, or give a security where neither existed. Estell's vendor's lien existed in full vigor

before the trust deed was executed, and that deed, at
best, could not have an operative legal effect beyond
the displacement of the lien as to the property mort-
gaged. The intention to retain the vendor's lien
existing through the whole transaction still exists as
to the third not mortgaged. 1 Hilliard on Mortgages,
ch. 23, § 37, *et seq.*

The cases in which this question has been discussed
are peculiarly uncertain and inconsistent, but a careful
examination of all the authorities will, we think,
establish this to be the law upon the subject. The law
presumes an intention to retain the lien, and imposes
on the vendee the burden of proving the contrary. To
discharge the lien, there must be some affirmative act
done by the vendor to waive it, or evincing a manifest
intention to rely no longer on it. The taking by the
vendor of " collateral security," either in property or
the engagement of some third person, or a distinct and
independent security for the purchase money, have
been held to discharge the lien, which otherwise the
law would imply it his favor. The taking of security,
hence, affords no more than a presumption, under some
circumstances, of an intentional waiver of the lien, and
not as conclusive of the waiver. In such cases the
burden of the proof is on the vendee to show that the
vendor agreed to rest on that security and to discharge
the land. Even the taking of a distinct and inde-
pendent security, as of a mortgage on another estate,
or a pledge of other property, is not conclusive evi-
dence that the vendor's lien upon the property sold is
waived.

The whole drift of all the authorities is this : that the
vendor must have taken some collateral security or
some express mortgage or pledge, either of the whole
of the property sold or some other property, before he
will be held to have waived or abandoned his lien. In
no case has it ever been held that the taking of an

express mortgage upon two-thirds of the land sold, and that exclusively in the interest of the vendee, was a displacement or waiver of the lien upon the third not expressly mortgaged. In Lewis v. Beatty, 32 Miss. 8, the high court simply decided that a vendor who only gave a title bond did not have the equitable lien which the law implies in favor of the vendor generally, because he held in himself the whole legal title. This case, therefore, does not change the view we have taken above. 2 Story Eq. Jur., § 1226, *et seq.*; 1 Hill. Mort., ch. 23, §§ 37, 38, 40; Clower v. Rawlings, 9 S. & M. 127; Johnston v. Union Bank of Tennessee, 37 Miss. 533; Fonda v. Jones, 42 ib. 794; Dodge v. Evans, 43 ib. 579.

As to the two-thirds of the property conveyed in trust to Wilson, there can be no doubt that the chancellor was right in appointing a receiver. The property is not worth the mortgage debt; the complainant has an express lien upon it, and the entire debt is due. But there are other circumstances in the case that absolutely necessitated the appointment of a receiver. Wilson, the trustee, and trusted agent of both parties, accepted the trust, and thereby legally and in conscience bound himself to sell the propepty as soon as the exigency stipulated in the deed arose. At the request of the *cestui que trust*, Estell, he advertised the property for sale, as required by his solemn engagement, but, when the time arrived, fraudulently declined to sell. The bill distinctly charges this fraudulent combination between the trustee and Myers, and the testimony clearly establishes it. If anything was needed beyond the letter of Wilson to Estell, demanding a compensation of $1,000 for services before they were rendered, would suffice; this fraudulent combination itself would be sufficient. There is, however, another ground relied upon as warranting the appointment of a receiver to take possession of, not only the two-

thirds of the property mortgaged, but the whole of it. The bill charges that it was the distinct agreement and understanding between the parties at the time the large indulgence set out in the trust deed was given, that Myers should cultivate the plantation from year to year and employ the annual profit and income arising therefrom in the payment of Estell's debt. The answer admits by not denying it, and the proof sustains this averment of the bill. Myers has never so applied the rents, but has positively misapplied them. It is charged in the bill, not denied in the answer, and sustained by the proof, that the land and the annual rents and profits arising from its use and occupation constitute a special fund to which the complainant has a right to resort for the satisfaction of his claim, by express agreement between the parties, made at the time of sale. This income is being lost annually by the misconduct and neglect of the appellant. These two facts combined would warrant the appointment of a receiver, even if the appellee had no lien at all. How much more strongly would the rule apply when he has an express mortgage on two-thirds of the land and a vendor's lien upon the remaining third?

It is insisted that the consideration of the notes was for personalty as well as realty, and it is not known how much or what proportion of the balance due Estell was for personalty. Therefore, that there is not a fixed amount due appellee for his land, and in accordance with the decision of the high court in Paterson v. Edwards, 29 Miss. 7, the motion should have been denied to this extent. In that case, in arguing, the court say that to create a vendor's lien, there must be a debt for the unpaid purchase of land to a fixed amount due directly to the vendor, but the point decided was, that when the obligation consisted of a collateral covenant, the vendor's lien did not attach. This, because a violation of the collateral covenant gave

rise to an action that sounded in unliquidated damages, and the amount had to be ascertained by a verdict of a jury. The point, however, if good at all, as a defense, does not appear upon the face of the papers. It is for the appellant to show that some part of the note sued on represents the value of personalty sold. And even then we submit that the appelles's lien would not be affected. Some $30,000 in cash were paid to appellee when the sale was consummated, and this would first be applied to the payment of the amount due for the purchase of the personalty. 1 Story Eq. Jur., § 459 *c.* Besides this, appellee has a trust deed upon two-thirds of the property to secure the whole debt, and this exhausted, the residue of the purchase money left unpaid, is chargeable upon the remaining third of the property. The agreement between the parties, made at the time of sale and purchase, that the rents should annually be applied to the payment of appellee's debt, will of itself sustain the appointment of the receiver by the chancellor. If there was any merit in the point suggested, it could readily be met by invoking the old legal maxim : *Id certum est quad certum reddi potest.* And this would, practically extended, justify the assertion that all of the purchase money left unpaid, after exhausting the security of the trust deed, would be held a lien upon the third of the property not expressly mortgaged.

On the re-argument of the cause, the solicitor for the appellant insisted upon the propriety of the first opinion reached by the court upon the authorities previously cited, and in an elaborate review of all the former decisions of the court, endeavored to show that the causes decided went off upon a defect in the notice required to be given by the party applying for a receiver, and that the case of Hill v. Robertson, simply decided that a receiver will be appointed when the

legal grounds are laid showing its necessity for the
security of the mortgagee.   In reference to the special
facts in the case to which attention was called by the
court, Mr. Ellet contended, that there was no argument
to apply the rents of the property to the payment of
mortgage debt, the bill simply charging that it was
"plainly anticipated" this should be done; that the
charge as to a fraudulent combination between Myers
and Wilson, to prevent either a sale under the trust
deed or the recovery of possession at law by ejectment,
was destitute of foundation in fact; that the advertise-
ment of the land and the institution of the action of
ejectment were premature, if days of grace were allowed
upon the notes and counted; and that Myers could not
be dispossessed unless his children and the trustee
representing them, were made parties to the suit,
which was not done.

*Nugent & Yerger,* for appellee, in reply:
The application for a receiver in this case rests, not
on the grounds which seem to have been alone con-
sidered by the court, but also upon these grounds:
1. The insufficiency of the property to pay the debt,
as shown by the deposition of Myers contained in the
record, the deficiency being about $22,000, and the
insolvency of Myers, as shown in his letters, in which
he states that he never will be able to pay the mort-
gage debt.
2. The failure on Myers' part to apply the rents and
profits arising from the property to the payment of the
mortgage debt, as was fairly anticipated when the prop-
erty was sold, and the long extension of credit given,
and the fraudulent misapplication of the same.
3. The fraudulent combination between Myers and
Wilson, trustee, preventing either a sale of the prop-
erty under the trust deed or the recovery of possession
under the action of ejectment at law

4. The sale of the mortgaged property for taxes.

By adopting the statement contained in Judge Ellett's brief, the court has been led into error. The court say it may be added: "That Myers, in his answer, says the property is worth the debt, and there is no proof on the point." There is, however, proof, not only of this, but also of Myers' insolvency. In his letter of July 12, 1869, he writes: "Times have changed so much since I made the purchase of the property, on which I reside, from you, that it will be impossible for me ever to pay the price agreed on. * * * I am willing to pay you $10,000 on the 1st of March next, and $10,000 on the 1st of January, 1871." In his letter of July 28, 1869, he says: "It will be a long time, I fear, before lands, the best improved, will bring more than $25 or $30 per acre. * * * This would give you $17,775, or at $30 per acre, would give you $21,330." After proposing a partnership, as a settlement of the debt, he says: "This shows you that I do not think the land is worth more than I offer you." Hence, he offers $20,000 in full settlement of the debt.

In reference to mortgages, the incident of rents and profits, in fact, is regarded as being better than the property mortgaged; and if it be now conceded that mortgagees are not entitled to these rents and profits pending a litigation on their mortgages, these deeds become a snare instead of a protection. It is a known fact that, in the great uncertainty of things existing at the present time, the rents and profits of lands for five consecutive years are worth more than the land itself. Nay, more, it is impossible to say what the land is worth. It has no fixed marketable value. A judgment or decree for an inconsiderable amount will sweep the most valuable landed property in the state; but while this is so, rents are known, and the prospective income therefrom arising for a succession of years may be readily deter-

mined. So that the reason on which the old adjudications as to receivers are based, has completely ceased to exist.

If the present case were to turn wholly upon the cases referred to by the court, we think the appointment of a receiver fully warranted. The proof of Myers' insolvency and of the inadequacy of the mortgaged property is ample and conclusive. And this, coupled with the allegation that the rents are indispensably necessary, in order to pay the mortgage debt, would seem to make out a perfect case for relief. We think, however, and respectfully suggest, that the view taken of the subject by the court, on the authority of the cases in New Jersey, New York, and Michigan, in opposition to the decisions of our own court, is incorrect. There can be no doubt that in the states named, the courts have decided in ordinary cases of foreclosure, that the insolvency of the debtor and the inadequacy of the property, combined, must be established to justify the appointment of a receiver; but this rule does not apply to cases in which there was an agreement that the rents and profits should be applied to the payment of the mortgage debt. This is the rule announced in several of the cases cited by the court; but the reason assigned is, that the mortgagee has the right to a recovery of possession by an action at law, and the perception, from the time of his right of entry, of the rents, and that his remedy in that behalf is plain, adequate and complete. If any other reason was necessary, it could readily be discovered in this, that in these very states, after exhausting the property mortgaged, the creditor is entitled to a judgment for the deficiency. So that in these states, the mortgagee can himself recover in ejectment in the first instance without resorting to the machinery of a court of equity, and directly secure the rents. The English cases proceed upon the same idea, and they deny the appointment of

a receiver, for the reason that the mortgagee may enter the premises and secure the rents. While this is true, however, we insist that our state adjudications are much better considered, and more satisfactory. In the case of Hill v. Robertson, 24 Miss. 368, the court in effect decide that mere insufficiency of the mortgaged estate, is enough to sustain the appointment of a receiver. They say: "The debt in this case is very large and bearing interest. Equity not only looks to present security, but to security which will be sufficient when the final decree shall be pronounced. The property may have been sufficient to accomplish the original design of the parties to pay the debt and interest at maturity; but it by no means follows it will continue sufficient for that purpose. To do so, it must increase in value in proportion as interest accumulates on the debt. This is not to be expected, as the income is not employed for this purpose. The property, for its increase in value, must depend upon the fluctuations of the market; and other causes would aid but little without a judicious investment of the annual income. Independent, however, of the plain case made by the pleadings and proofs, the complainant may rest his claim to a receiver upon another point; upon the maturity of the debt and a failure to pay, the legal title became absolute in the complainant. The legal title draws to it the right of possession, which, if enjoyed, would give the income of the property to the mortgagee to keep down the annual interest; and the surplus, if any, to apply to the principal." The court say further: "Upon this failure to pay, the legal estate vests in the mortgagee, as an incident to which is the right of possession, which is necessary to be enjoyed either by the mortgagee himself, or managed for his benefit by the court, to meet the debt which the law creates in the shape of interest, and which we must suppose was not provided for in the mortgage, but it

could only accrue by a breach of contract on the part
of the debtor in failing to pay at the time stipulated;
and the law presuming that every man intends to per-
form in good faith his contracts, would not presume
that the mortgage was more than a sufficient security
for the principal and interest to maturity of the debt."
This decision made in 1852, and acquiesced in ever
since, we submit ought to be adhered to more vigor-
ously now than ever.  The reasoning is more satis-
factory, and the conclusion better, than in these cases
decided by courts in other states, where property values
are fixed and laws for the recovery of debts are more
speedy and certain.  If the mortgagee is entitled to
the possession at law, why not appoint a receiver at
once?  What use is there for sending him to another
tribunal for that relief which a court of chancery may
readily administer by the appointment of a receiver?
Why impose upon the mortgagee two suits, when one
alone is necessary?  Why not prevent circuity of
action and multiplicity of suits at once?  The case of
Hamblin v. Percival, Marble et al., 24 Miss. 586, con-
tains the same doctrine, as does also that of White-
head v. Wooten, 43 Miss. 523.  And, while it is true
that this last class went off on the insufficiency of the
notice for the appointment of a receiver, the general
doctrine is canvassed fully, and a safe conclusion
reached.  One of the grounds for the appointment of a
receiver is stated to be the fraud of the mortgagor, and
this applies to the case at bar.  In the case of Vause v.
Woods, 46 Miss. 129, the court say: "If the property
was worth more than the debt, there would be no
reason to put the case in the custody of a receiver,
unless the defendants were committing waste and
deteriorating its value.  The court will not interfere
for a mortgagee, except upon the ground that the prop-
erty is insufficient to pay his debt, and, therefore,
pending litigation he should have the rents and

income." This case also went off on the insufficiency
of the notice, but the court at the same time say:
" We have thought it proper to refer to these general
principles which govern the jurisdiction of the court."
The same doctrine is laid down in the case of Mays v.
Rose, et al., Freeman Ch. 718.

We have, therefore, in our state, an unbroken series
of cases, in all of which the same adjudication has been
made, and in none of which is the view taken by the
court in this case sustained. It would appear improper,
therefore, to reverse the decree of a chancellor which
proceeded upon a firm reliance on the decisions of the
last resort in the state. If chancellors and judges can-
not be controlled and directed by the opinions of our
own supreme court, to what courts may they resort for
guidance ? The argument *ab inconvenienti* in this is
irresistible. Right or wrong, proper or improper, the
law has been so adjudicated, and it is much better to
adhere to it than to change it.

But we do not think the cases referred to by the
court sustain the decision as it respects the present
controversy, and will refer to them briefly. The case
of Best v. Schermier, 2 Halst. (N. J.) 154, was one in
which the prior mortgagee claimed the rents and
profits against a junior incumbrancer, holding from the
mortgagor an assignment of the rents and profits, and
who, for aught that appeared, had an adéquate security
in his first mortgage. The proceeding was merely to
foreclose the mortgage. In Hamburg Manufacturing
Co. et al. v. Edsell, 3 ib. 298, the property in contro-
versy was in the hands and possession of trustees for
creditors, and the motion for a receiver was made
because the trustees denied the trust in favor of the
Hamburg company. They admitted the trust created
by the words of the agreement between the agreeing
creditors. The court say: "A denial of the trust
would not, of itself, make the appointment of a receiver

necessary on the establishment of the trust. Where
there is no ground for the apprehension of loss by per-
mitting the property to remain in its appropriate use
in the occupancy of him who has the use of it, and his
ability to respond for its use is admitted, and he is one
of the persons who has been ordered in the cause to
account before a master for the rents and profits that
may have been received, I see no good end to be
attained by the appointment of a receiver for the pur-
pose of taking charge of the property." But on page
301 the court expressly say: "If the case stood now
as it did when it passed from my hands before, there
would be a ground for the appointment of a receiver,
arising from the constructive fraud by which the prop-
erty got into the hands of L'Hommdieu, who, it may
be remarked, was decreed by the appellate court to be
a trustee in possession for creditors generally."

In Cortezan v. Hathaway, 3 Stock. (N. J.) 39, the
court say, the rule as to the appointment of receivers
in New York does not apply in the state of New Jer-
sey. They deny a receiver to the first mortgagee be-
cause of his plain remedy at law; but in this very case
they say: "When there is any act on the part of the
mortgagor     *     *     which shows fraud on his part, or
makes him chargeable with bad faith in misapplying
the rents and profits for other purposes than that of
keeping down the interest or the incumbrance, in such
cases the court may very properly appoint a receiver."
The facts are almost identical with those of the case
at bar.

The case of Weaver v. Gouverneur, 1 Barb. 38,
decides, that when the mortgagee has failed to take a
lien on the rents and profits to keep down interest on
his debt, a receiver will only be appointed in cases
when the property is an inadequate security for the
debt, and the mortgagor is insolvent. In Bank of
Ogdensburgh v. Arnold, 5 Paige, 40, the inadequacy of

the property was held to be a sufficient reason for the appointment of a receiver. On page 41, the court say: "The mortgagees have no specific lien on the rents of the mortgaged premises until the mortgage debt becomes due, so as to entitle them to a foreclosure of their mortgage. As it is alleged that the father of the defendants died insolvent, they are of course liable to his creditors in equity for whatever comes to them by descent from him as his heirs at law, whether in the shape of rents or otherwise." And this was a strong point in the case—not the insolvency of the parent, but the insolvency of the heirs at law was the question at issue. As they were not insolvent, and were liable to account for rents, the court denied the receiver. In Lea Insurance Company v. Stebbins, 8 Paige, 567, there was no sufficient proof of the insufficiency of the mortgaged property to pay the debt, and the only ground relied on was that. The case of Astor v. Turner, 11 Paige, 436, decides that the insufficiency of the property and the insolvency of the mortgagee must both appear before a receiver will be appointed. In Brown v. Case, Walk. (Mich.), the mortgagor was a bankrupt, and there was no proof of the insufficiency of the property to pay the debt. In Payne v. Atterbury, Harring. Ch. (Mich.) 614, the court say: "Nothing can be clearer, both in law and equity, and from natural justice, than that the complainant (mortgagee) is entitled to the rents and profits from the time his title accrued; and the case is still stronger where there are large outstanding incumbrances, and no part of the rents and profits is applied to keep down the interest, and the defendant is totally irresponsible, and is holding over against his own deed. In such a case the complainant is entitled to a receiver."

We have thus gone on all the cases cited by the court to sustain its decision, and a careful analysis of the facts in each case makes it manifest that not one of

them bears any similarity to the case at bar; and all
of them, in so far as they do bear upon the only point
noticed by the court as being decisive of this case, are
wholly at war with the settled practice in this state.
No questions of expediency are suggested why this
change in policy should be made, but there are
abundant reasons for a contrary adjudication. That the
court of last resort should stand by its decisions is a
principle conceived in wisdom and strengthened by a
steady adherence on the part of the judges, the world
over; and to depart from this settled principle will
destroy that stability and uniformity in the adminis-
tration of justice which the present condition of our
country imperatively demands.

The case presents a very simple ground for the
appointment of a receiver. That the security for the
debt is a deed of trust makes no difference, and the
court has well said, in the opinion delivered in this
case : " It was held in Wolf v. Dowell, 13 S. & M. 108,
and repeated in Carpenter, Ex'r v. Bacon, 42 Miss. 50,
that deeds in trust are of the same sort of security as a
mortgage, subject to the application of the same
principles. Both are pledges as indemnity for the
debt. The distinguishing difference is, that one com-
municates a power of sale, whilst the other ordinarily
does not." This is the view taken by Hilliard in his
work on Mortgages (2 Hill. Mort. 16, 18, 450, 451 *n*),
and conclusively demonstrated in the following authori-
ties: Erskine v. Townsend, 2 Mass. 693; Nugent v.
Riley, Metc. 117; Eaton v. Whiting, 3 Pick. 484;
Shaw et. al. v. Norfolk Company Railway, 5 Gray, 162;
King v. Longworth, 7 Ohio, 231; Stanhope v. Mannier,
2 Eden, 197; West Branch Bank v. Chester, 11 Penn.
St. 282; Balf v. Lord, 2 D. & W. 480. See 2 Red.
Railw. 463–480, foot note, where the question is fully
discussed.

In this case, however, there is no difference at all.

The distinguishing difference referred to by the court has ceased to exist. The fraudulent conduct of the trustee, in refusing to execute after accepting the trust, leaves the instrument to all intents and purposes, as a pure mortgage in the hands of Estell, and it must be so regarded by the court. The facts relied on, therefore, are briefly these: The grantor and trustee, by a collusive arrangement between them, have prevented the *cestui que trust* from receiving the legal benefits arising under the trust deed, from having a sale of the property and recovering possession under the deed, and thereby securing the rents and profits; the property is a scanty security for the debt, and the debtor never will be able to pay it; the land has been sold for taxes, and the entire mortgage debt was due when the bill was filed. . If the decision of the court, as rendered, be maintained, the grantor in the deed of trust will secure the benefit of his own wrong, and be allowed to take advantage of his fraud. It is no answer to say, as was done in New York and New Jersey, the *cestui que trust* had a plain remedy at law, because his legal remedies have all gone and been destroyed by the combination between Myers and Wilson. Can it be asserted that when a party, by fraud, injures another and deprives him of a legal right, a court of chancery is powerless to grant relief? All our ideas of justice lead to the conclusion in this case, that it was the duty of the chancellor to seize the property, through a receiver, and do just exactly that which would have been done had the trustee discharged his plain duty, especially when the default on the part of the trustee was occasioned by the fraudulent arrangement above alluded to. What would have been the result if Wilson had sold according to his advertisement, and suffered the prosecution of the action of ejectment? The property would have passed into the possession of the *cestui que trust*, or other purchaser, in the summer or fall of 1870,

and the rents and profits during that year, and all successive years, would have been secured to him. By affirming the decree of the chancellor, just exactly the same result would be reached. If Myers could give a *supersedeas* bond, and bring his case up to this court, he could readily have enjoined the sale of the property under the trust deed, and this pretense in justification or excuse of his fraudulent combination with Wilson is too barefaced to be discussed.

The court say, in commenting on the tenor of the trust deed: " He, Wilson, is invested with the legal title, with a power to communicate it to the purchaser to raise the money value of this property, and not for the purpose of using it to obtain possession, that he may pay the debts out of the income;" but precisely the same objection would apply to a mortgage either with or without the power of sale. In all such cases, the idea is to sell the property to pay the debt, and yet there is the legal title which is to be used for the payment of the debt and to be availed of in all its incidents for that purpose. This legal title draws to it the possession of the property, and the rents and profits as incidents to that possession. And this seems to have induced the statement by the court, that " if the trustee, however, should obtain possession by suit, or voluntary surrender, of course he should account for the rents." As Judge Fisher remarked, in Hill v. Robertson, *supra*, the parties contemplated that the land mortgaged was worth the principal of the debt, but must be presumed to have intended a payment of the notes as they matured. On default in the payment of the notes, it must be held that they considered the rents and profits as the fund to keep down the accruing interest.

But the very reasons stated by the court, in concluding their argument on the first branch of this case, as warranting the appointment of a receiver, exist in all

their rigor.   The value of the property is inadequate to pay the debt—the debtor is insolvent—and the property is in danger of absolute loss by the sale for taxes.   And beyond all these, there is fraud, conspiracy and collusion charged and proven.

We have not thought proper to assail the opinion of the court, in so far as it denies to Estell the vendor's lien on the undivided third of the property not mortgaged.   We had pressed the point, that it existed until intentionally displaced, or expressly or by necessary replication waived; and that the taking of a trust deed on two-thirds of the property sold, could not, on principles of logic, displace the lien which rested on the other third.   We submit, however, to the opinion of the court in that respect as being sustained by reason, and the adjudications of our own court.

SIMRALL, J.:

This appeal brings into review the order of the chancery court appointing a receiver.

Estell filed his bill to have the execution of a deed of trust, given to secure the purchase money for lands and other property sold and conveyed by him to the appellant, Wm. G. Myers, and also to enforce the vendor's lien, claimed as extending to one-third of the lands not embraced in the deed of trust.   The trust security embraces two-thirds of the land conveyed to Myers; the vendor's equity is asserted to the other third.   It was held in Wolfe v. Dowell, 13 S. & M. 108, and repeated in Carpenter, Ex'r v. Bowen, 42 Miss. 50, that deeds in trust are of the same sort of security as a mortgage, subject to the application of the same principles.   Both are pledges as indemnity for the debt.   The distinguishing difference is, that one communicates a power of sale, while the other ordinarily does not.

At the first argument, the decree was questioned

upon two grounds: 1. That the rents and profits not being pledged, the creditor had no right to them, through a receiver, unless the lands are insufficient to pay the debt, and the debtor is also insolvent; 2. The right to such appointment, if it exists at all, extends to two-thirds of the lands conveyed by the deed, Estell not having a vendor's lien to the other third.

1. If the mortgagee or beneficiary in the trust deed do not stipulate for the rents and profits of the estate, ordinarily they are not entitled to them. It is well settled that they have no claim upon them until the mortgagee has taken possession. The purpose of the appointment of a receiver may be two-fold: First, to preserve the estate from waste, spoilation or decay; or, secondly, that the rents may be got in and applied to the debt.

Upon what principles may a receiver be appointed pending a foreclosure suit? Unless there be a stipulation in the contract that the mortgagee shall have the rents, he has no claim merely on the ground that the debt is due and the title has become absolute. He may enter after default made, or he may recover possession at law, and out of the rents and profits satisfy the debt; that is one of his remedies more commonly employed in Great Britain than in this country. But if he proceeds to foreclose, he elects to raise the money by a sale of the property. Receivership is one of those remedial agencies devised orginally in order to preserve the fund or thing from removal beyond the jurisdiction, or from spoilation, waste or deterioration pending the litigation. This was the original purpose: a preservation of the thing, so that it might be appropriated as the final decree shall appoint. Injunctions rest a good deal upon the same reason, by restraining from the doing of a wrongful act, which might altogether defeat the complainant's right or

produce such injury as could not well be compensated in damages.

The mortgagee or trust creditor, if he has no lien upon the rents, must rest his claim to them on the ground that the property is insufficient to pay the debt, and that without this redress he will lose the residue of it; or he must go upon the predicate that it is necessary to interfere with the mortgagor's possession in order to prevent the removal of the property beyond the reach of the court, or to save it from wasture and deterioration. In these latter circumstances, the debtor perpetrates a positive wrong, which either endangers altogether a realization of the fruits of the suit, or diminishes the value of the security. The election of the chancery forum is to prefer to convert the property into money and pay the debt, rather than the legal remedy to get payment out of the rents and profits. In this case, the application is to be maintained, if at all, upon the allegation of the insufficiency of the property to pay the debt. If the only means or source of payment was out of the property, the creditor would present a very urgent reason why the property should be made to produce the utmost farthing pending the litigation. But suppose the debtor is abundantly able to pay the deficit, upon sale of the mortgage premises, and there is therefore no apparent danger that the creditor will lose any part of his debt, must a receiver be appointed? The bill does not in terms allege that Myers is personally insolvent, or that he is unable to pay an expected deficiency on foreclosure sale.

Some of the American courts have gone further than the English chancellors on this subject. The British rule is to deny to the mortgagee a receiver merely to get in the rents, for the reason, as expressed by Lord Eldon, in Berney *v.* Sewell, 1 Jac. & Walk. 627, he has

a remedy at law. His language is, the "mortgagee who has the legal estate cannot have a receiver." "An equitable mortgagee may." * * 2 Dan. Ch. Pr. 1492, title, Receiver. The English rule prevails in New Jersey, where, as a general practice, a receiver will be denied to the legal mortgagee having a legal right to the rents and profits; if he desires their permanency, he must enter or recover the premises in ejectment. Cortelyeu v. Hathaway, 3 Stock. 41; Best v. Schermer, 2 Halst. Ch. 154; Brown v. Chase, Walk. 43; Payne v. Atterby, Harth. 414. Such an application on the part of the junior mortgagee, who has but an equitable estate, stands upon much more favorable ground. He has no remedy at law, and has a deep interest that the rents shall be so directed as to reduce prior incumbrances (Bryan v. Cormick, 1 Cox Eq. 6 a, 422; Dalmer v. Dashwood, 2 ib. 378); but if the first mortgagee is in possession he will not be disturbed. Mere inadequacy of value will not, ordinarily, without other special circumstances, entitle the mortgagee to a receiver. 3 Halst. 41. Regarding the mortgage as more especially a security for the debt, we think the better rule to be that which will grant the receiver or not, as it may or may not be an essential means to pay the debt. There can be no necessity for this auxiliary remedy if the mortgagor is solvent and able to pay any deficiency. In such cases, the creditor ought to be left to his legal remedy to get at the rents. The courts of New York and some other states act upon that principle. Thus, in the Lea Insurance Company v. Stebbins, 8 Paige, Ch. 565, the question was, what averments were necessary to be made in the petition for such appointment in the foreclosure suit; it was held, it must show, first, a deficiency in the value of the mortgaged property; and, secondly, "that the mortgagee, or other person personally liable for the debt, is irresponsible, or is unable to pay the expected deficiency."

In Warner v. Gouverneur, Ex'r, 1 Barb. 38, the rule is said to be, to appoint a receiver " where the premises are an inadequate security, and the mortgagor or other person in possession who is personally liable, is not of sufficient ability to answer for the deficiency." The mortgagee cannot call upon the mortgagor to pay rents, or account for them. The extent of his right, if the security be inadequate and the mortgagor not solvent or able to pay the anticipated deficit, is to obtain the rents pending the foreclosure suit through a receiver. Aster v. Turner, 11 Paige Ch. 327.

But few cases have arisen in this court on this subject. The cases of Whitehead v. Wooten, 43 Miss. 526, and Ross et al. v. Woods, Ex'r (MSS.), were adjudged on the insufficiency of the notice of the motion, although there is some reference to the general principles which should govern the court. In Hill v. Robertson, 24 Miss. 373, it does not appear from the report whether the mortgagor was insolvent or not; the property, however, was inadequate. In the Bank of Ogdensburg v. Arnold, 5 Paige, 40, the chancellor apparently puts his judgment on the ground that the debt was due, and the mortgaged premises insufficient in value; but a careful examination will show that the mortgagor, who had deceased, was insolvent, and the case harmonizes with the subsequent decisions referred to.

The authorities are uniform, that the appointment of a receiver lies very much in discretion, and therefore the circumstances of each case must be looked to. Whilst this may be so, many principles have been well settled, and where the facts come within their operation discretion ceases and the rule applies.

But whilst the mortgage and deed in trust are alike in many respects, there may be a radical difference in others. The mortgagee and trustee both take the legal title; the latter, however, for the purpose of

performing the trusts with which the estate is burdened. The trustee is a middle man between the grantor and *cestui que trust*, ordinarily indifferent between them, and without interest. The title is communicated to him, so that he may fully discharge the duties imposed, and protect the interests of the *cestui que trust.* It becomes necessary to look to the terms and stipulations of his deed.

Upon default made in the payment of the debt, and after the expiration of eighteen months from the maturity of the last installment, the condition was that the trustee should advertise and sell. Such security does not contemplate a right or duty in the trustee to take possession, or recover it at law for the purpose, like the mortgagee, of paying his debt out of the rents and profits, and, when that is done, restore the property to the mortgagor.

In this deed the title is conveyed to Wilson, in trust, and, upon the condition of default made, that he may sell and convey, and apply the proceeds to the debt. The effect is to give the trustee the legal title, for the single purpose to sell and convey, and pay the money to the creditor. In this particular, this, an ordinary deed in trust, differs from the mortgage; the latter conveys a defeasible title, which becomes absolute on condition broken. And thereupon, the mortgagee, under his absolute right at law, may enter; but he holds as mortgagee, subject to an account for the income to the mortgagor, who may redeem. The trust which Wilson engaged to perform "was to advertise and sell, and pay over the proceeds." It is not within the scope of his engagement to enter, and receive the income, and apply that until the debt is satisfied. The law would not impose upon him larger duties and responsibilities than he has assumed by the contract. Nor is it necessary that Wilson should recover possession, in order to execute the trust. He is invested

with the legal title, with a power to communicate that title to the purchaser, to raise the money value of the property, and not for the purpose of using it to obtain possession in order to realize the rents and profits. It seems to us, therefore, to be very plain that this deed, so far from devoting the rents and income to the debt, in its scheme and terms does no more than pledge the property to a sale for its payment. Although the trustee takes the title, it is not at all for the purpose that he may enter upon the land and appropriate its profits and revenues.

In dealing with this deed in trust, a court of equity, regarding it as a security made by the debtor for his creditor, will give that creditor the substantial benefit of it. It is to be deduced from the scheme of the sale and purchase, that Myers might reasonably be able, from the products of the property, and perhaps some other resources, to pay the entire debt within the three years, the limit of the credit; but out of abundant caution he stipulated in the deed that a sale under it should not be made until eighteen months after the maturity of the last note; thus, in effect, so far as the security was concerned, insuring a credit of four years and six months.

When nothing was paid during this intended credit, it might well be supposed that the creditor would insist, after its expiration, upon a rigid enforcement of his remedies. Hence we find that he causes suit upon the notes, an ejectment for the possession to be brought, and the trust property to be advertised for sale. We attach no importance to the ejectment suit, except as it evinces a peremptory determination to insist upon the enforcement of his debt. In this posture of things, overtures and persuasions were employed successfully by Myers to induce Wilson to dismiss the ejectment and withdraw the advertisement of the sale. Wilson so far yielded as to abandon the trust and to decline

altogether to proceed with its execution.   The reasons
assigned are, that the course pursued by Estell was harsh
and oppressive.   But Wilson had voluntarily assumed
to carry out the conditions of the deed by a sale when
the contingency happened; he engaged to act as trustee
for both parties; something rested upon him to be done
for both.  If he abandoned the position of neutrality,
and declined to perform what he was under a contract
to do at the instigation of Myers, and his forbearance
to act was for the benefit of Myers and to the prejudice
of Estell; if this combination of the debtor and trustee
deprived the creditor of the benefit of his security,
according to its tenor and terms; caused a postpone-
ment of the realization of his debt, and weakened his
security, entailing, because of it, upon the creditor, ex-
pensive and disadvantageous litigation, then there has
been such misbehavior and misconduct by the trustee
and debtor as operates a fraud upon the creditor.   It
was the right of Estell to have had a sale of the prop-
erty; it was the privilege of Myers to have stopped
the sale by injunction, if he had cause sufficient, upon
the terms of executing a proper bond.   The conduct
of these parties has postponed a sale until the end of
a protracted litigation, leaving Myers, in the mean
time, in the possession and enjoyment of the income,
and without any additional security; whereas, if both
debtor and creditor had stood upon their rights under
the contract, Estell would have had a sale, or, if hin-
dered in that, a bond indemnifying for the interruption.
The principles of a court of equity are founded upon
morality, and are applied in the administration of jus-
tice under the guidance of enlightened reason and
conscience.   In view of the fact that the property is a
precarious security for the debt, and the further fact
that the obligations of tenants for rent, amounting to
several thousand dollars, have been assigned to a non-
resident, in part to create a fund subject to Myers' con-

trol out of the state; of the fact that he has conveyed one-third of the plantation in trust for his children; that he has combined with the trustee and deprived the complainant of the enforcement of the trust security according to its tenor, and, notwithstanding the forbearance of the creditor for four years, has made no payment on the debt, ought he to be suffered to reap the advantages which he has thus obtained? We think not. In no other mode, productive of such little injury to either party, can this be done, as by intrusting the property to a receiver, whose control of it will not be adverse or hostile to either, but who will hold it and its income so as to answer the ends of justice when the final decree shall be rendered. If, as stated in the answer, the sale was advertised to have been made in Washington county, instead of Bolivar, or if the suit had been brought prematurely, it would have been the duty of the trustee to have called in the advertisement, and to have dismissed the suit, so that there might have been a rectification of the mistakes and errors. But he abandoned the trust altogether.

The non-payment of taxes, or suffering the title to be embarrassed by a tax sale (Wall Street Ins. Co. v. Loud, 20 How. Pr. 96), or the unfairness of the covenant of the mortgagor, will justify the appointment of a receiver. Finch, Adm'r v. Houghton, 19 Wis. 158; Callahan v. Shaw, 19 Iowa, 183. We think that the combined influence of the circumstances of this case authorized the chancellor to appoint the receiver.

The remaining question is, how much of the estate shall the receiver take in charge? The complainant insists that it shall extend to the entire plantation, including the one-third not embraced in the deed in trust. The answer to that depends upon the question whether he has a charge or lien upon it for his debt.

Is there, then, an equitable lien on that portion of the land not embraced in the deed in trust?

There is some confusion and uncertainty in our books as to the effect of taking collateral security, whether in the personal obligation of a third person, as surety on the note for the consideration money, or his separate engagement, or a mortgage of the same, or other property. In Patterson v. Edwards, 29 Miss. 71, a covenant or agreement to take up the debt of the vendor to a third person was esteemed a waiver of the lien. Such an obligation is instead of the lien, and a security for the purchase money. In Johnson v. Union Bank of Tennessee, 37 Miss. 533, it is declared in general terms, " that it is too well settled to admit of controversy, that where a distinct and independent security is taken the lien is discharged." In the prior case of Johnson v. Sugg, S. & M. 347, it is said, " that the authorities establish and command assent, that the note with personal security deprives the vendor of his lien." The still later case of Fonda v. Jones, 42 Miss. 795, whilst inclining to the rule that the taking of personal security on the note is only *prima facie* evidence of waiver, and may be rebutted by satisfactory evidence that it was intended that the vendor should retain his lien, the court say, however, that the most cogent and irresistible circumstances must be shown in order to overcome the presumption of waiver.

It was laid down in an early case (Bond v. Kent, 2 Vern. 281), and recognized as sound in Clover v. Rawlings, 9 S. & M. 128, that where a party had carved out his own security the law will not create another in aid. In Gilman v. Brown, 1 Mason, 212, Judge Story, after a careful examination, states, " that he found no case where the taking of collateral security was not considered a waiver; and was inclined to consider that as the better rule." The experienced equity judge, in Cole v. Scott, 3 Wash. C. C., thought that the lien was lost quite as effectually by taking a

security as by a sale without notice to the sub-vendee. The debt must be for a "fixed amount." 29 Miss. 71.

The lien is implied from the presumed intention of the parties. Judge Story says: "It is manifestly founded on the supposed conformity to the intention upon which the law raises the implied contract, and therefore it is not inflexible that it shall be inferred, but ceases to act when the circumstances of the case do not justify such conclusion. 1 Mason, *supra*; Gilman v. Brown, 4 Wheat. 272; Servis v. Beaty, 32 Miss. 80; Fonda v. Jones, 42 ib.

Testing the transaction between these parties by the principle so reasonable and just: "That the equity is founded on a supposed conformity to the intention of the parties; that it is an implication of law, which arises or not according to the circumstances," what are the rights of the vendor?

Upon a sale of the property, including some personal property on the premises, $31,000 are paid down, and the balance, $40,000, is deferred in installments. What amount was estimated for the personal effects does not appear. To secure the credit installments, a deed of trust covering two-thirds of the land is executed, with the provision that a sale should not be made under it until eighteen months after the last installment was due. The creditor has selected his security. The circumstance that it does not reach to all the property, suggests, that in view of the large cash payment, but $9,000 less than half the price of the entire estate, it was supposed to be ample, although the land itself was all that could be looked to. But, in addition, the vendor had the personal engagements of the vendee falling due from year to year. The fair inference is, that Estell was content to rely upon the limited security on the land, and the personal security of the notes; and therefore the equitable lien was within the intendment of the parties. The recitation in the

deed that the creditor was desirous of giving " additional security," therefore the land is conveyed in trust, follows the recital of the notes ; and the additional security evidently meant the trust deed in " addition " to the personal obligation of the notes, and not the vendor's lien.   But, within the scope of many of the authorities, the taking of the deed of trust is absolutely a waiver of the lien.   Those which hold that it is not an absolute abandonment, declare that it raises the strongest presumption of abandonment which can only be overcome by the clearest and most satisfactory proof.   This is so, unless the position of counsel for appellee be tenable, that the rule does not apply because this security was taken on the property sold, and only on part of it.

It is difficult to form a distinct idea of the vendor's equity.   In defining what it is, jurists have been driven to the negative mode of declaring what it is not. Thus, in 1 Mason, 221, *supra,* Story, J., says : " It is not of so high and stringent a nature as that of the judgment creditor.   It is not an equitable estate in the land itself, although that appellation has been loosely applied to it."   So in this court, in Trotter v. Evans, 27 Miss. 778, it is described as having some of the incidents of a mortgage, though of a very distinct nature.   The mortgage is a conveyance of the legal estate upon which the mortgagee may recover the possession.   In its form it is separate and distinct from the debt, and an additional and more solemn acknowledgment of and security for the debt, whereas the vendor's lien consists solely in the debt, and has no form apart from it."   Judge Story says : " It is a right which has no existence until it is established by the decree of the court in the particular case."   Myers so framed his specific security as that he should not be molested in his possession until eighteen months after the last installment was due.   This indicates that the

revenues of the estate were looked to as a large means of payment, and is inconsistent with the idea that he might be deprived of possession of one-third of the property by the enforcement of the vendor's lien for non-payment of the first installment. The early case of Bond v. Kent, 2 Vern. 280, gives no support to the position taken for the appellee. There Kent purchased lands of Bond, and re-mortgaged them for securing part of the purchase money, and for the other part, £200, a note was given. The question was, whether the £200 shall be looked on in equity as a charge upon the land held, or not. In Brown v. Gillman, 4 Wheat. 490, Chief Justice Marshall, considering the effect of retaining a lien to a limited extent, remarked: "The express contract that the lien shall be retained to a specified extent, is equivalent to a waiver of that lien to any greater extent." In both of these cases the express liens were upon the lands which had been purchased. In Phillips v. Saunderson, 1 S. & M. Ch. 465, the principle received an application. The deed in trust on the property purchased only protected a part of the debt. The chancellor put his judgment on what he understood to be the settled rule, that where there is an express lien on part of the estate for the purchase money, it excludes the idea of an implied lien for the residue, for *expressio uniam facit cessari tacitum*. See also, McCure v. Harris, 12 B. Mon. 265. The bill avers that the lien was retained, the answer denies it. We have therefore considered the question as it presents itself on the face of the transaction. There are other questions which we forbear to consider. We think there is no lien.

We are of opinion, therefore, that the complainant ought to have a receiver on the undivided two-thirds of the property embraced in the deed in trust; not, however, to interfere with any leases made to tenants or to disturb their possession.

The decree will be modified and reversed, and cause remanded for further proceedings in accordance with this opinion.