## LOUISIANA NATIONAL BANK ET AL. *v.* BELLE KNAPP.

1. VENDOR'S LIEN. *Right of other than vendor to enforce.*

    A party who conveys land, for which he has not paid the purchase-money, with the understanding that his vendee shall pay the amount due to the original vendor, has a right to hold and fasten a lien upon it for the amount of the price to be paid so long as the land remains in the possession of his vendee or a volunteer under him.

2. SAME. *Where land is received.*

    The vendor's lien arises as well where by exchange land is to be received as where money in specie is to be paid.

3. VENDOR'S LIEN.  *Assignment.  Section 1124 of Code 1880.*

  Section 1124 of the Code of 1880 providing for the assignment of the vendor's lien in effect strikes down and overrules all those cases which hold that no lien exists except when there be as parties litigant a buyer and a seller of the land.

4. SAME.  *Claim for price held by assignee.*

  If the suit be against a vendee or a volunteer for an agreed price there shall always be a lien for the purchase-money when the assignee is a holder of the claim for the price.

5. SAME.  *When a vendor is bound for the price.*

  Under § 1124, Code 1880, a lien arises as to the vendee and volunteers where-ever the price is fixed and agreed on between himself and his vendor, and the vendor is in any manner bound to pay the price, the price never having in any manner been received by him.

APPEAL from the Chancery Court of Hinds County.

HON. E. G. PEYTON, Chancellor.

The facts are stated in the opinion.

*Calhoon & Green,* for the appellant.

1. It seems clear that, though there is in the bill a prayer for general relief, none other would be admissible under it than the enforcement of a vendor's lien.   To obtain this is the entire scope and purport of the bill.   Any other relief would operate a surprise on defendants not to be tolerated.   Daniell, Ch. 3, C. & Pr. top 449, 450 ; Code 1880, § 1868.

2. However, we think the court will conclude that the bill entitles the complainant to no relief of any description.   If it did, the demurrer should none the less have been sustained, as it is aimed at the claim of a vendor's lien.

3. Plainly there was no vendor's lien.   The deeds between Powell and Mrs. Knapp were warranty deeds and recited as the whole consideration the exchange of property with warranty. Putting appellants in Powell's shoes, how can Mrs. Knapp set up against him that besides the expressed consideration there was yet another, to wit, the payment of six hundred and forty-five dollars ? Might she not as well have said six thousand four hundred and fifty dollars ?   See the door this would open.   It violates the whole

spirit of the statute of frauds. *Skaggs* v. *Nelson,* 25 Miss. 88. In order to create a vendor's lien there must be a debt for unpaid purchase-money due *directly to the vendor. Patterson* v. *Edwards,* 29 Miss. 67 ; *Pitts* v. *Parker,* 44 Miss. 250 ; *Myers* v. *Estill,* 48 Miss. 409 ; *Perkins* v. *Gibson,* 51 Miss. 705 ; *Rutland* v. *Brister,* 53 Miss. 686 ; *Murphree* v. *Countiss,* 58 Miss. 716 ; 9 Cowan 266 ; 5 Greenl. 81.

4. The foregoing authorities are cited on the whole case and are thought to be conclusive of it in favor of appellants. ˙ They are not infringed upon by *Lee* v. *Newman,* 55 Miss. 370, 371, 372. In that case this court points on the recitals of the deed specifying the lien, and the reasoning is all our way.

*Wells & Williamson* and *E. E. Baldwin,* for the appellee.

1. It would be a fraud on Mrs. Knapp to permit Powell or the bank, who, with the notice they had, to stand in Powell's shoes, to take her property without paying the consideration. The consideration received by Mrs. Knapp for her land was an unincumbered title to the Bolton lot and house. Powell has failed to pay this to the amount of the Bonnie vendor's lien note with the interest. Mrs. Knapp had a right to impose upon the sale of her property any conditions she chose, and when the vendee took the property on the terms expressed, he takes it " *cum onore* " and must discharge the burden ; nor is the parol agreement to pay the debt or obligation due another obnoxious to the statute of frauds, which requires the agreement to pay the debt of another to be in writing, when such agreement constitutes a part of the consideration for the sale of land. Powell had simply agreed to pay his own debt as part of the consideration of the land bought from Mrs. Knapp. See *Lee* v. *Newman,* 55 Miss. 373; 3 Pars. on Con., fifth ed., 24.

2. Powell held the land in the nature of a trust until he paid the full consideration which his warranty deed to the house and lot and verbal agreement to remove the incumbrance binds him to pay, and neither Powell nor any one claiming under him with full notice will be permitted to hold the land without relieving the house and lot of the incumbrance. Overton on Liens 659 bottom and 660 top; Jones on Mort., vol. 1, § 204.

3. The cases cited by opposing counsel are not similar to the one now before the court. In those cases the court say that a verbal agreement to pay a debt due by the vendor will not give a lien, but in this case Powell simply agrees to pay his own debt, which is a definite sum of money, and by that payment he is relieving the house and lot in Bolton of the incumbrance. If Mrs. Knapp has that lien to raise, which she must do to save her property, she lacks just that much of receiving the full value of her land. Surely a court of equity will not protect Powell in a case of this kind, and through him it will not protect the bank who has a mortgage on all his property, as the bill shows. It is not necessary that the consideration of the sale of land should be money to give the lien, so that it is something of definite value. *Harvey* v. *Kelly,* 41 Miss. 490; Overton on Law Liens, § 620.

4. The amount due by Powell to Mrs. Knapp as a balance of the consideration is fixed definitely by the Bonnie note. We think the case of *Lee* v. *Newman,* 55 Miss. 372 and 373, settles the principles of this. In *McDale* v. *Purdy,* 23 Iowa 277, the court held that where parties exchanged premises by guaranty deeds and it turned out that the value of one parcel of the land was much less than the land taken in exchange and this fact had been fraudulently concealed, that there was a vendor's lien for the difference between the actual and the represented value. Powell here conveys a house and lot free from incumbrance. Certainly there should be a lien on the land and the money necessary to free it from incumbrance.

5. But whether the court holds this to be strictly a lien, yet under the principles announced in *Lee* v. *Newman,* 55 Miss. 373, the land should be held responsible for the Bonnie note. The bill contains a prayer for general relief, and the state of facts set forth in the bill shows ample grounds for relief.

Chalmers, J., delivered the opinion of the court.

Powell and wife received title to a house and lot in the town of Bolton from Bonnie and wife under a deed from the latter, which admonished all the world that the deferred note to the latter was a lien on the land, though the word lien was not contained in the

deed. Mrs. Knapp for this house and lot in Bolton swapped to Powell a piece of land in the country containing one hundred and twenty acres. Mutual warranty deeds passed between the parties, Powell warranting the title to the house and lot in Bolton, and Mrs. Knapp warranting the title to the one hundred and twenty acres in the country. No money was paid by either party, but both took possession of the land allotted to them. Powell at once delivered to Calhoon & Green, trustees for the Bank of Louisiana, a mortgage upon the one hundred and twenty acres to secure an old note due the bank. Powell informed the trustees exactly how he held the one hundred and twenty acres, and told them that he was obliged by his contract with Mrs. Knapp to pay the note due to Bonnie and wife as the consideration of the one hundred and twenty acres received from her. The bank therefore holds the land exactly as Powell held it, and it is bound as to the bank by any lien which Mrs. Knapp can fasten upon it as against Powell. The bank admits that Mrs. Knapp can hold Powell personally liable, but denies that she can fasten any lien of any sort upon the land. Whether she can or not is the sole question in the case.

The note due by Powell to Bonnie and wife is now due and unpaid. Powell is hopelessly insolvent. Mrs. Knapp is being pressed by Bonnie upon the debt due him. The debt due the bank is now due and the trustees have advertised the one hundred and twenty acres of land for sale for the purpose of paying the bank, and Mrs. Knapp files this bill to enjoin them from selling without reserving enough out of the fund to save her harmless against the claim of Bonnie. In other words, she claims that Powell owes her as the consideration of the one hundred and twenty acres the amount due to Bonnie, and that she can fasten this as a lien or trust upon the one hundred and twenty acres in the hands of the bank, which is a mere volunteer with full notice. Mrs. Knapp is the vendor and grantor of the one hundred and twenty acres, and as such she has the right to hold it liable and to fasten a lien upon it for the amount of the price to be paid for it so long as it remains in the hands of the vendee or in the possession of volunteers under him, nor does she lose this right because that consideration, instead

of being money, was really by exchange of lands, the value agreed to be paid in the reception of lands rather than in money.    The vendor's lien arises as well where by exchange land is to be received as where money in specie is to be paid.    *Drinkwater* v. *Moreman*, 61 Ga. 395 ; *Bryant* v. *Stephenson*, 58 Ala. 636 ; *Pratt* v. *Clark*, 57 Mo. 189 ; *Dawson* v. *Girard Life Co.*, 27 Minn. 411 ; *Burns* v. *Taylor*, 23 Ala. 255 ; *McDale* v. *Purdy*, 23 Iowa 277.

·  Formerly in this State there was no vendor's lien except where the relation of vendor and vendee of the land sought to be reached existed between the parties, and hence where then the claim had been assigned the lien was gone.    As the lien arose solely from the relation an assignment of the debt which destroyed the relation must destroy the lien.    Many instances of this are to be found in our books, in all of which it was held that unless the relation of buyer and seller actually existed there could be no lien upon the land.    *Skaggs* v. *Nelson*, 25 Miss. 88 ; *Patterson* v. *Edmunds*, 29 Miss. 67 ; *Pitts* v. *Parker*, 44 Miss. 250 ; *Myers* v. *Estell*, 48 Miss. 409 ; *Rutland* v. *Brister*, 53 Miss. 686 ; *Murphree* v. *Countiss*, 58 Miss. 716.

This is all changed by § 1124 of Code of 1880, by the last clause of which it is provided " that the assignee of a claim for the purchase-money of land may enforce the vendor's lien as the vendors could."

This means of course that the lien may be transferred with the claim, and that where by the original contract the contemplation is that it shall be transferred in the act of sale the agreement itself will operate as a transfer.    In other words, where by the contract it is agreed that payment of the purchase shall be made to another, such other becomes the payee of the purchase price and shall have a lien on the land sold just as the vendor would have had.    It strikes down, therefore, and overrules all those cases which hold that no lien exists except where there be as parties litigant a buyer and seller of the land, and creates the lien for the price as well for an assignee afterward as for an assignee at the time and by means of the contract.    It follows that if the suit be against a vendee or a volunteer for an agreed price there shall always be a lien for the

purchase-money where the assignee is a holder of the claim for the price. Such is the effect of the new statute. Such is the doctrine generally held when the assignability of the lien is recognized. *Whitsell* v. *Roberts*, 31 Ohio St. 503 ; *Roper* v. *Day*, 48 Ala. 509; *Pinchain* v. *Collard*, 13 Tex. 333.

The case of *Patterson* v. *Edwards*, 29 Miss. 67, besides holding that the lien could only subsist when the relation of vendor and vendee subsisted (to which extent it is overruled by the statute above referred to), also held that it did not arise where there was accepted for the purchase-money the collateral obligation of the vendee to take up the note of the vendor to a third person. Now it seems to us that when the vendor of the land accepts for the price the obligation of the vendee to take up his own note or that of the vendor it is wholly immaterial whether that note be payable on its face to the vendor or to a third person, since in either case it constitutes the price of the land, and it is substantially the note of the vendee which is to be met ; and that therefore wherever that note comes against the vendor he must have a right to fasten its amount on the land held by the buyer, since otherwise it cannot be said that he has received the price of his land from him who still holds it. Where he executes his own note directly to his vendor for the purchase-money it is clear that it is his obligation to pay his own note that is always accepted in some sense as a collateral obligation to pay, and it is always held that in such case the lien arises. We think under the new code that a lien arises as to the vendee and volunteers wherever the price is fixed and agreed on between himself and his vendor, and the vendor is bound in any manner to pay the price, that price never having in any manner been received by him.

In the present case the money due Bonnie and wife constituted, save the land received, the whole price of the one hundred and twenty acres, of which Mrs. Knapp was the vendor and Powell was the vendee. That land remains in the hands of the vendee and volunteers with notice. Bonnie and wife can at their election fasten a lien either on the place in Bolton or on the one hundred and twenty acres, and Mrs. Knapp, unless her bill *quia timet* is upheld,

being about to be compelled to pay the purchase-money of her land to Bonnie and wife, and thus to lose it, may upon well-settled principles invoke for herself in a court of equity that protection which she has carved out for Bonnie and wife. *Lee* v. *Newman*, 55 Miss. 371.

*Decree affirmed.*