[No. 338. January 12, 1889.]

## HENRY D. BATES AND GEORGE W. COOKE, PLAINTIFFS IN ERROR, v. WILLIAM B. CHILDERS AND THOMAS F. CONWAY, DEFENDANTS IN ERROR.

VENDOR'S LIEN—EQUITY—REMEDY AT LAW—JURISDICTION.—In a proceeding, by bill in equity, for the enforcement of a vendor's lien, against an assignee of the property, purchasing with knowledge of the lien, an objection that the plaintiff has an adequate remedy at law on the contract with the original vendee, is not well founded, where it appears the latter is insolvent. A court of equity will remit a party to his remedy at law only when an equally efficient remedy exists there. A judgment which can not be collected at law can not be said to be equally as efficient a remedy as a decree establishing a lien upon property sufficient to satisfy the amount of the judgment.

ID.—EXPRESS RESERVATION, NOT NECESSARY TO CREATE LIEN—PRESUMPTION.—In such a proceeding, it is not necessary to show an express reservation by the seller to create the vendor's lien; it will be presumed, by a court of equity, as an incident to the transaction, in the absence of any facts showing an intention to exclude it. Jones on Liens, sec. 1064.

ID.—CONTRACT OF SALE—CONSTRUCTION OF CONTRACT.—Where it is stipulated in a contract for the sale of an undivided interest in a mine, that the unpaid balance of purchase money shall be paid when the mine is sold, out of the proceeds of sale, the vendee to reimburse himself for any money necessarily expended by him for assessment purposes, out of the first money realized from the sale, the residue to go to the vendor until he shall receive the amount due him, the balance to be paid is a sum certain, for which a vendor's lien will exist.

ID.—ENFORCEMENT OF LIEN BY ASSIGNEE—PERSONAL JUDGMENT.—The lien of a vendor for purchase money may be enforced, in equity, by his assignee for value, either as against the original vendee, or against one who purchases from him with notice that the purchase money has not been paid. But it is error in such case to render a personal judgment against the assignee, where there is nothing in the bill or evidence to support such a judgment.

ERROR, from a judgment in favor of plaintiffs, to the Second Judicial District Court, Socorro County. Judgment affirmed with the modification that so much of the judgment be stricken out as provided for execution against defendant Bates.

The facts are stated in the opinion of the court.

WARREN & FERGUSSON for plaintiffs in error.

The court erred in overruling the demurrer to the bill. No lien existed in favor of Smith, as vendor of the mine, upon the facts shown. It distinctly appears from the agreement of Cooke, accepted by Smith, that the latter accepted it as a substitute for and in novation of the balance of the unpaid purchase money, and not as security therefor. If Smith had brought suit against Cooke for the balance, the special agreement would have been a sufficient defense; and this is held to be the sure criterion as to the question of existence of a vendor's lien. 1 Eq. Lead Cas. [4 Am. Ed.] 466, 470; 3 Pom. Eq. Jur., sec. 1252, and cases cited; Dixon v. Cafere, 20 Beav. 118; Keith v. Wolf, 5 Bush. 646; Thames v. Caldwell, 60 Ala. 644; 3 Hilliard on Mort. 696.

The balance was not a sum certain, but such amount as might remain of the proceeds of a future sale by Cooke, after deducting his expenses for assessments, not exceeding $750. If the proceeds of sale were not sufficient to pay the $750, Smith would only be entitled to the amount received from Cooke. A vendor's lien does not exist in favor of an uncertain or contingent demand. Harris v. Hanie, 37 Ark. 348; De Forest v. Holum, 38 Wis. 516; Patterson v. Edwards, 29 Miss. 67; 3 Pom. Eq. Jur., sec. 1251; 3 Wash. Real Prop. p. 90, et seq.; Selby v. Stanley, 4 Minn. 65; Daughaday v. Paine, 6 id. 450; Walker's Am. Law, 315.

The common law "as recognized in the United States" is adopted in this territory. The vendor's lien is not recognized as existing in a majority of the states, and may be regarded as not adopted here. 3 Pom. Eq. Jur., sec. 1349, and notes; 3 Wash. Real Prop., p. 93, and note.

The lien of a vendor is personal to himself, and can not be assigned. While under our law the complainants could sue as assignees of the contract, they are not entitled to the lien. Cordova v. Hood, 17 Wall. 8; 3 Pom. Eq. Jur., sec. 1254, and cases cited; 2 Wash. Real Prop., p. 92, sec. 3, chap. 16; Wing v. Goodman, 75 Ill. 159; Richards v. Leaming, 27 Ill. 431.

Complainants have an adequate remedy at law. Hayward v. Andrews, 106 U. S. 672; Litchfield v. Ballou, 114 id. 190.

The decree is fatally erroneous in rendering a personal and general judgment against defendant Bates.

The relief given by a court of equity in case of a vendor's lien is similar in all respects to that for foreclosure of a mortgage. Markoe v. Andras, 67 Ill. 34; Gaston v. White, 46 Mo. 486; King v. Y. M. Ass'n, 1 Woods, 386.

Judgment could only be entered for a deficiency of proceeds of sale. Eq. Rules, New Mexico, rule 16.

C. L. JACKSON and W. B. CHILDERS for defendants in error.

The answer waived the demurrer, and it ceased to be a part of the record. Young v. Martin, 8 Wall. 354; Adams v. Howard, 9 Fed. Rep. 347; Basey v. Gallagher, 20 Wall. 670; Marshall v. Vicksburg, 15 Wall. 146.

The defendant can not avail himself of the plea, unless he stood on its sufficiency. The answer was general and overruled the plea. Taylor v. Luther, 2 Sumner, 228; Stearns v. Page, 1 Story, 204.

An agreement by which the maker incurs an obligation, and pledges the produce of land, or the land itself as security, gives a lien. 3 Pom. Eq. Jur., secs. 1233-1237, and notes; Chase v. Pick, 21 N. Y. 581; Spofford v. Kirk, 97 U. S. 487.

"Every executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund therein described or identified a security for a debt * * * creates an equitable lien upon the property so indicated, which is enforcible against the property, in the hands, not only of the original contractor, but of * * * his purchasers or incumbrancers with notice." 3 Pom. Eq. Jur., sec. 1235; Daggett v. Rankin, 31 Cal. 321; Wright v. Ellison, 1 Wall. 16; Exchange Bank v. McClown, 73 Me. 498 (40 Am. Rep. 388); Wright v. Bircher, 72 Mo. 179.

The assignment of a fund to come into existence in future is an equitable assignment. U. S. v. Carlisle, 4 Am. L., U. S. Cts. 231 (6 circuit, Mich.); Knapp v. Alvord, 10 Paige, 205; Field v. Mayor (N. Y.), 57 Am. Dec. 435, and notes; Trull v. Eastman, 37 Am. Dec. 128, and notes; East Lewisburg Co. v. Marsh, 91 Pa. St. 99.

An assignment of part of the purchase money to come into existence when a sale was made, of which

the purchaser was notified, and to which he assented, is good in the hands of the assignee. 31 Cal. 321; Barnard v. Nowich R'y Co., 4 Clifford, 351; Peugh v. Porter, 112 U. S. 737.

Where there is no controlling, settled local rule of property, the federal courts will apply the rule that a lien for purchase money passes by assignment of the debt. Ober v. Gallagher, 93 U. S. 199.

The enforcement of an equitable lien is an appropriate head of equity jurisdiction. Vallette v. Whitewater Valley Canal Co., 4 McLean, 192.

As to such liens, see: 3 Pom. Eq. Jur., secs. 1255, 1258, and notes; Markal v. Andrews, 67 Ill. 34; Ober v. Gallagher, 93 U. S. 208.

The court had jurisdiction of the parties and the subject-matter. Bates did not answer. Cooke filed no exceptions to the master's report. Neither can be heard now. Equity Rules, 16, 17, p. 31; id. 85–87, p. 31; 2 Danl. Ch. Pr. 1303, et seq.

To prevent a resort to equity the remedy at law must be equally as efficient. Wylie v. Cox, 15 How. 415; Watson v. Sutherland, 5 Wall. 75.

Equity once acquiring jurisdiction retains it to give entire relief within the equities to be enforced. Ober v. Gallagher, 93 U. S. 199; Kennedy v. Creswell, 101 id. 641; Tayloe v. Ins. Co., 9 How. 370.

No exceptions were filed before the master, and no exceptions to his report filed in the district court. The decree was in accordance with the report, and can not be reviewed here. Danl. Ch. Pr. and Pl., 1303–1319; Copeland v. Cram, 9 Pick. 73; Byington v. Wood, 1 Paige, 45; Story v. Livingston, 13 Pet. 359; Hudgins v. Kemp, 20 How. 45; New Orleans v. Gaines, 15 Wall. 625.

If the decree is erroneous in awarding a general execution as to Bates, the court will amend it here.

LONG, C. J.—This cause is here on writ of error sued out by Henry D. Bates and George W. Cooke, who are plaintiffs in error. The action was commenced in the court below by William B. Childers and Thomas F. Conway as complainants, making the plaintiffs in error in this court defendants to the bill of complaint in the court below. The bill of complaint is as follows:

"'TERRITORY OF NEW MEXICO, SECOND JUDICIAL DISTRICT. COUNTY OF SOCORRO—SS.

"In the district court of Socorro county, New Mexico, in the Second judicial district.

"To the Honorable WILLIAM H. BRINKER, associate justice of the supreme court of New Mexico and judge of the Second judicial district of said territory of New Mexico: William B. Childers, of Bernalillo county, and Thomas F. Conway, of Grant county, in the territory of New Mexico, bring this bill against Henry D. Bates and George W. Cooke, both of Socorro county, New Mexico, and thereupon humbly complaining, your orators, William B. Childers, of Bernalillo county, and Thomas F. Conway, of Grant county, territory of New Mexico, respectfully represent unto your honor that on or about the twentieth day of April, 1883, one John D. Smyth was the owner and possessed of a certain mine known as the Imperial mine, located and situated in the Magdalena mountains in Socorro county, New Mexico; that afterwards, on the———day of———, 1883, said John D. Smyth sold and conveyed an undivided one fourth interest in said Imperial mine to defendant George W. Cooke, of Socorro county, New Mexico; that by the term of said sale from said Smyth to said Cooke that said Cooke was to pay said Smyth the sum of $500 cash in hand; and the further sum of $750 was to be paid said Smyth when the said Imperial mine should be

sold out of the proceeds of such sale, provided that said Cooke was to be compensated for all money necessarily laid out by him for assessment purposes, and then all of the balance of the money received for the above-mentioned one fourth interest to go to said Smyth, until he should receive the said sum of $750; that said Smyth was entitled to and at said time of said sale reserved a vendor's lien upon said mine to secure the payment of said sum of $750 unpaid purchase money; that a memorandum of said contract of sale was reduced to writing, and signed by said Cooke, and by him delivered to said Smyth, and the same was duly filed for record in the office of the probate clerk and ex-officio recorder in and for said Socorro county, New Mexico, on the second day of May, 1883, and was duly recorded in Book 8, page 218, in the records of said office, and the original of which said memorandum is herewith filed, and made a part of this bill and marked 'Exhibit A;' that the said John D. Smyth, being at that time and afterwards indebted to complainants, in payment of said indebtedness, on the twenty-fifth day of March, 1884, in writing on the back of said memorandum, assigned to complainants the right, title and interest of him, the said Smyth, in and to said contract, and also assigned the complainants the balance of the purchase money due on account of said fourth interest in said Imperial mine, and the said vendor's lien upon said mine, and authorized the payment of said balance to said complainants; and that on said twenty-fifth day of March, 1884, said memorandum of said contract of said sale, with the said indorsement on the back thereof, was again filed for record in the office of the probate clerk and ex-officio recorder in and for said Socorro county, and was duly recorded in Book 10, page 623, of the records of said office, all of which will appear from said 'Exhibit A;' that one John M. Shaw, now deceased, at one time was possessed of and the owner

of the other undivided three fourths interest in said Imperial mine, but before his decease sold and conveyed the said undivided three fourths interest in said Imperial mine to defendant Henry D. Bates. '

"The defendant Cook on the —— day of August, 1886, sold and conveyed the above mentioned undivided one fourth interest in said Imperial mine, which he had bought as aforesaid from said John D. Smyth, to defendant Henry D. Bates for a large sum of money, more than sufficient to compensate defendant Cooke for all money necessarily laid out by him for assessment purposes, and to satisfy the aforesaid claim of seven hundred and fifty dollars unpaid purchase money, now due complainants, and interest thereon; that said defendant Henry D. Bates is now the legal owner and in possession of said Imperial mine; that prior to the said purchase of said Imperial mine by said defendant Henry D. Bates from defendant George W. Cooke and from said John M. Shaw, deceased, and prior to said defendant Henry D. Bates acquiring any right or title in said Imperial mine, said defendant Henry D. Bates had full knowledge of the fact of the above mentioned seven hundred and fifty dollars being unpaid purchase money on said Imperial mine, and that it was to be paid to complainants; that since said conveyance of said one fourth interest in said Imperial mine from defendant Cooke to defendant Bates, both said defendants Cooke and Bates have promised to carry out said contract of sale as witnessed by the said Exhibit A, and have agreed that said defendant Bates should pay to complainants the said sum of seven hundred and fifty dollars unpaid purchase money, as aforesaid, and satisfy claimants' just demand and lien therefor, but said defendant Bates has failed, and still fails, to pay the same, though it has long since been due and payable; that defendant Henry D. Bates has paid part of the money he agreed to pay for said one fourth interest

in said Imperial mine to defendant George W. Cooke, instead of paying the same to your complainants, after recompensing said defendant Cooke for the money said Cooke necessarily laid out for assessment purposes; that the amount of the money so paid to said defendant Cooke by said defendant Bates was more than enough to recompense said defendant Cooke for money necessarily laid out by him for assessment purposes, and to satisfy the said claim for unpaid purchase money now due complainants, and that there is still due from said Bates on account of the aforesaid purchase of said one fourth undivided interest in said mine from said Cooke by said Bates a sum of money more than sufficient to pay and satisfy said sum of seven hundred and fifty dollars and interest thereon, being unpaid purchase money on said one fourth interest in said mine as aforesaid; and that said defendant Cook is insolvent.

"Forasmuch, therefore, as your complainants are without remedy in the premises, except in a court of equity, and to the end that the said Henry D. Bates and George W. Cooke, who are made parties defendants to this bill, be required to make full and direct answer to the same, but not under oath, the answer under oath being hereby waived, and more specially they may answer and set forth—First, the consideration for the said sale of the aforesaid one fourth interest in said Imperial mine from defendant Cooke to defendant Bates; second, the amount of money necessarily laid out by defendant Cooke for assessment purposes on the aforesaid one fourth interest in said Imperial mine; third, the amount of money paid by said defendant Bates to or on account of said defendant Cooke, as a part of the consideration from defendant Bates to defendant Cook, for said one fourth interest in said Imperial mine; fourth, the amount of money now due from said Bates on account of the purchase by him as aforesaid

from said Cooke of the undivided one fourth interest in said mine.   And to the further end that an account may be taken in this behalf under the directions of the court, that your complainants may be decreed to be entitled to a lien upon the said premises for the amount due your complainants as unpaid purchase money as aforesaid, and interest thereon; and that the said defendant Henry D. Bates may be decreed to pay your complainants the amount so found to be due, by a short day to be fixed by the court, and that in default of such payment the said premises may be sold as the court shall direct to satisfy said amount and costs; and that your complainants may have such other and further relief in the premises as equity may require and to your honor shall seem meet.

"May it please your honor to grant the writ of subpoena in chancery directed to the sheriff of said county of Socorro, commanding him that he summon the defendants Henry D. Bates and George W. Cooke to appear before the said court on the first day of the next November term thereof, to be held at the couthouse in Socorro, in the county of Socorro aforesaid, and then and there to answer this bill.       C. L. JACKSON,
"Solicitor for Complainants."

The defendant Henry D. Bates was duly served with process, but, failing to file answer, the bill was taken as against him as confessed for want of such answer.   George W. Cooke, however, appearing in said court, filed a demurrer to the bill of complaint.   The court overruled the demurrer, and that action is assigned for error here.

It is contended by plaintiff in error, in argument, that there is no equity in the bill, because the plaintiffs have a clear and adequate remedy at law on the contract executed by Cooke to Smyth at the time of the purchase of the mine, and because complainants are assignees of the contract, and not the vendors of the

mine, and for the further reason that no vendor's lien
was reserved by the seller at the time he sold the mine.
It is averred in the bill that Cooke is insolvent, so as a
personal judgment against him would be fruitless, and
equity would not remit a complainant to a fruitless suit
at law to procure a judgment, where it is admitted that
such a proceeding would be barren of results. It is
only when the party has an equally efficient remedy at
law that equity will require him to go there for his
relief in the first instance. It can not be said that a
judgment which can not be collected would be equally
as efficient a remedy as a decree establishing a lien
upon a piece of property amply sufficient to make the
amount of the judgment.

The contention, that no "vendor's lien was reserved
by Smyth upon the mine at the time of the sale,"
raises the question whether any such a reservation is
necessary. If so, then the vendor's lien is not one
which arises out of the transaction, but only becomes such
when reserved. 2 Story, Equity Jurisdiction, section 1218,
defines the true character of the vendor's lien: "This
lien of the vendor of real estate for the purchase money
is wholly independent of any possession on his part;
and it attaches to the estate as a trust, equally whether
it be actually conveyed or only be contracted to be
conveyed. It has often been contended that the crea-
tion of such a trust by courts of equity is in contraven-
tion of the policy of the statute of frauds, but, whatever
may be the original force of such an objection, the
doctrine is now too firmly established to be shaken by
any mere theoretical doubts. Courts of equity have
proceeded upon the ground that the trust being raised
by implications, is not within the purview of that stat-
ute; but is excepted out of it. * * * The principle
upon which courts of equity have proceeded in estab-
lishing this lien in the nature of a trust is that a person
who has gotten the estate of another ought not in con-

science, to be allowed to keep it, and not to pay the full consideration money." Jones, Liens, section 1064, states the rule thus: "The lien is presumed to exist in all cases, unless an intention be clearly manifest that it shall not exist. * * * Being an incident of the transaction, it is excluded only by facts which show an intention to exclude it. Want of knowledge on the part of the vendor that the law gives a lien, or a secret intention on his part not to claim it, does not affect the right." The true character of this lien is thus shown by authority not to be one created by express contract, requiring for its creation words of reservation, but one raised up as a matter of conscience, as an implication out of the transaction. The lien grows out of the sale, and the duty of the buyer to pay the purchase money. "Where a vendor delivers possession of an estate to a purchaser without receiving the purchase money, equity, whether the estate be or be not conveyed, and although there was not any special agreement for that purpose, gives the vendor a lien on the land for the money." 2 Sugd. Vend. 324. These authorities make it clear there was no need of reservation by the seller to create the vendor's lien.

Plaintiffs in error urge the further objection: "The balance due was not a sum certain, but such amount as might remain of the proceeds of a future sale by Cooke after deducting Cooke's expenses for assessment work, not exceeding seven hundred and fifty dollars." This contention is not well sustained when the terms of the written promise to pay are considered. The instrument of sale contained the promise to pay as follows:

"This is to certify that, whereas, John D. Smyth, of Socorro county, New Mexico, has this day sold and conveyed to me one fourth interest in the Imperial mine, located in the Magdalena mountains, in the county of Socorro, for the sum and price of twelve

hundred and fifty dollars, five hundred dollars of which
I have paid cash in hand, the remaining seven hundred
and fifty dollars to be paid when the mine is sold, out
of the proceeds of the sale; that is to say, I am to do
the necessary work on said one fourth interest to keep
up the assessment until patent is obtained, or the mine
sold, and out of the first money realized from sale I am
to repay myself the money necessarily laid out for
assessment purposes, and then all the balance of the
money received for this one fourth interest to go to
said John D. Smyth until he shall receive the seven
hundred and fifty dollars then due him.

"George W. Cooke."

In this contract $1,250 is the price named for
which the one fourth interest was sold. That repre-
sents the purchase money, and is a sum certain. Of
that amount $500 was paid in cash, leaving a balance
of $750 yet to be paid, which sum, it is recited in the
closing part of the contract, is to be paid to Smyth.
The sum to be paid is certain, but the time of payment
may be indefinite. The sum to be paid is $750, the
unpaid balance of the $1,250 purchase price; the time
of payment is after a sale of the mine, and a reimburse-
ment to Cooke of his expenditures for made assess-
ments.

The remaining question is whether the written
promise to pay is assignable, so as to vest in the
assignee the right to sue in a court of equity to enforce
the vendor's lien existing originally in favor of the
seller. A reference to the bill shows that the complain-
ants therein averred that in payment of an indebtedness
due from Smyth to Childers and Conway, Smyth, by
writing indorsed on the back of the contract, assigned
to them, not only all his right, title, and interest in the
contract, or promise to pay, but also the vendor's lien
on the mine, and authorized Cooke to pay the assignees
the amount due to Smyth. In 2 Story, Equity Jurisdic-

tion, section 1039, the doctrine of assignments at law is discussed. In the next section it is said: "But courts of equity have long since totally disregarded this nicety. They accordingly give effect to assignments of trusts and contingent interests, and expectancies, whether they are in real or in personal estate, as well as to assignments of choses in action. Every such assignment is considered, in equity, as in its nature a declaration of trust, and an agreement to permit the assignee to make use of the name of the assignor in order to recover the debt, or to reduce the property to possession. * * * Courts of equity will support assignments, not only of choses in action and of contingent interests, but also of things which have no present actual or potential existence, but rest in mere possibility. * * * [Id., sec. 1044]; for instance, if A., having a debt due to him from B., should order it paid to C., the order would amount in equity to an assignment of the debt, and would be enforced in equity, although the debtor had not assented thereto. * * * In such case a trust would be created in favor of the equitable assignee on the fund, and would constitute an equitable lien upon it." Section 1047: "To constitute an assignment of a debt or other chose in action in equity, no particular form is necessary. Indorsing a bond or delivering to an assignee, amounts to an assignment. Indeed, any order, writing, or act which amounts to an appropriation of the fund amounts to an equitable assignment of the fund. The assignee is generally entitled to all the remedies of the assignor. In case of assignments of a debt, where the assignor has collateral security therefor, the assignee will be entitled to the full benefit of such security, unless it is otherwise agreed between the parties."

There can be no doubt that the averments of the bill disclose at least such an assignment of the written contract, or promise to pay, as would carry to the

complainants an equity therein sufficient to give them
standing in a court of equity; especially if upon further
examination it be determined that in addition to the
equitable right to the debt due from Cooke to Smyth
the transaction also carried to them the right which
vested in Smyth to his vendor's lien. That is a ques-
tion upon which the courts are divided, and which. has
not been decided in this territory. In a note to section
1092, Jones on Liens, the result of the English authorities
is thus stated: "By the English authorities, the lien
seems to be assignable, though the cases are not deci-
sive." The author, in the same section, states:
"Whether the vendor's lien is assignable with the debt
which it secures is a question upon which the authori-
ties are not agreed." In a note to the same section
the author gives a list of cases which, he states, hold
the vendor's lien to be assignable by indorsement of the
note given for purchase money. The cases cited are
not at hand, and therefore we are unable to verify the
author's conclusions as to their effect, but nevertheless
state the cases so cited. Alabama: Wells v. Morrow,
8 Ala. 125; · White v. Stover, 10 Ala. 441; Roper v.
McCook, 7 Ala. 318; Lang v. Wilkinson, 57 Ala. 259;
Buford v. McCormick, Id. 428; Wilkinson v. May, 69
Ala. 33. Indiana: Nichols v. Glover, 41 Ind. 24;
Kern v. Hazlerigg, 11 Ind. 443; Wiseman v. Hutch-
inson, 20 Ind. 40; Fisher v. Johnson, 5 Ind. 492.
Kentucky: Honore v. Bakewell, 6 B. Mon. 67; Rip-
perdon v. Cozine, 8 B. Mon. 465; Eubank v. Poston,
5 Mon. 285, 286; Johnston v. Gwathmey, 4 Lit. 317;
Broadwell v. King, 3 B. Mon. 449. Mississippi: Code,
1880, section 1124; Louisiana National Bank v. Knapp,
61 Miss. 485. Missouri: Sloan v. Campbell, 71 Mo.
387. South Carolina: 36 A. M. R. 493. Texas: Can-
non v. McDaniel, 46 Tex. 303; White v. Downs, 40
Tex. 225; Watt v. White, 33 Tex. 421; Moore v. Ray-
mond, 15 Tex. 554; Brooks v. Young, 60 Tex. 32.

The greater number of states have held to the contrary of this doctrine, but it is for this court to determine as an original question in this territory which view is founded in the better reason, and is most calculated to secure the ends of justice. A consideration of the nature of the lien conduces with great force to the conclusion that its assignability should be upheld. "There is a natural equity, it is said, that the land shall stand charged with so much of the purchase money as is not paid at the time of the conveyance." Jones, Liens, section 1061. "It has become one of the best-established principles of natural equity that estates are to be regarded as unconscientiously obtained, when the consideration is not paid." Id., note.

It seems to us a hardship on the purchaser that he shall hold an equitable security on land sold for the payment of a purchase money note, but be deprived of the means of realizing the value of such security by negotiating the note. In his hands, the note may be worth its face, by reason of the equitable lien, but worth nothing aside from the lien, by reason of the inability of the maker to pay, and we can see no good reason why the holder of such a security should not be given its full value by holding power to assign the same to a purchaser as an incident to the debt. The negotiable character of a promissory note is one of the qualities which adds to its value, and often in the vicissitudes of business it becomes important for the holder of the note to realize upon it before maturity, by its use as a collateral security, or by sale and assignment. To hold that such holder could not carry by assignment the equitable lien, constituting in many cases the chief value of a purchase money note, would be to deprive him of the benefit of his lien in many instances. If it is a natural equity that the vendor have such lien, a like equity would require that he have the full benefit of it as against the purchaser and as against

a purchaser with notice of the equity from the first vendee. One who buys with full knowledge that there is unpaid purchase money owing by his vendor, has in his own hands full power of protection, and to require, when such act in no way harms him, that he pay the unpaid purchase money in his hands owing to his vendee to the discharge of the original vendor's lien, is but working out to a practical and just end the natural equitable lien attached as a matter of conscience to the estate in his hands. We hold, therefore, in this territory, the lien of the vendor for unpaid purchase money should be upheld, both in the hands of the vendor and the hands of his assignee for value against the original vendee, and also against a purchaser from him, who buys with full notice or knowledge that the purchase money has not been paid. It thus appears that the bill of complaint is not subject to demurrer, and no error was committed by the court in its action thereon. The answer raises the same questions, only in a different form, as the demurrer to the bill, so it is not necessary to consider in detail the action of the court in sustaining a demurrer to the answer.

Most of the questions raised in the record are disposed of by what has thus been determined. The evidence in the case fully proves the allegations of the bill, and supports the findings of the master. It is clearly proven that the mine was sold and conveyed by Cooke to Bates, and he was placed in possession thereof. Bates testified that he bought of Cooke the one fourth interest in the mine sold by Smyth to the latter, and agreed with Cooke to pay him therefor $5,000, and had already actually paid him $3,000. It appears that this last sum more than reimbursed Cooke for all money paid out for the assessment work. Bates also swears that he actually owed Cooke at the time of the examination over $1,000 on the purchase

price agreed to be paid for the mine by Bates to Cooke; that at the time of the purchase, and before the conveyance to him, he knew that Cooke was owing as purchase money the debt sought to be recovered. He thus stands with the purchase money due to Cooke from him on the sale of the latter to Bates in his hands, ready to pay the same wherever it should be equitably applied, and also with knowledge, when he bought, of the purchase money indebtedness. Bates can in no way be harmed. All parties are before the court, and if Bates is decreed to pay to Childers and Conway as the assignees of Smyth, instead of being permitted to pay to Cooke, such payment by Bates will operate to the extent of the amount paid to discharge his debt to Cooke. In its practical effect the contention is between Cooke and the assignees of Smyth, and they stand, or did so at the time of the trial, in the attitude stated.

It does not appear that any of the objections urged here are well taken, unless it be one stated in the fourth assignment of error. The objection there taken is to the form of the judgment. The court below rendered, not a general decree fixing the lien on the mine for the unpaid purchase money, but also a personal judgment against Bates, upon which execution might issue, to collect the judgment as a personal debt. There is nothing either in the bill or evidence to support a personal judgment against Bates. As the parties and the whole record are here, this court has power to modify the judgment, and it will be accordingly ordered in this court that the judgment of the court below be so far modified as to strike out the provision therein for execution as against Bates, and that said judgment shall stand modified, so far as it fixes a personal liability against Bates, and so as to stand only as a decree for the payment of the purchase money and order to sell the one fourth interest in the mine on

default of such judgment. With this modification in the form of the judgment the action of the court below is affirmed.

HENDERSON and REEVES, JJ., concur.